JOHN H. ELY AND WILSON C. ELY, PARTNERS, ETC., AS J. H. & W. C. ELY, PLAINTIFFS IN ERROR, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK, DEFENDANTS IN ERROR.

Argued March 3, 1908—Decided June 15, 1908.

By the act of 1900 (*Pamph. L., p.* 321), the board of health of Newark was empowered to resolve that it was necessary to establish a hospital, and directed to set forth in the resolution the estimated cost thereof, and certify the resolution to common council, and thereupon the common council was directed to appropriate a sum of money not exceeding $100,000, for furnishing buildings for such hospital. *Held*, that the board of health could not bind the city to pay for plans and specifications for a building which would cost $200,000, which plans could be of no use in estimating the cost of a building which would cost $100,000, or less.

On error to the Supreme Court.

For the plaintiffs in error, *Riker & Riker.*

For the defendants in error, *Francis Child, Jr.*

The opinion of the court was delivered by

REED J.    This action was brought against the city of Newark by the plaintiffs, who are architects, to recover the value of their services for drawing plans and specifications for a hospital building. The plaintiffs did the work by the direction of three members of a committee of the board of health of the city of Newark.

The ability of the board of health to bind the city of Newark by this employment, if such ability exists, springs from the act of 1900. *Pamph. L., p.* 321. Section 1 of this act in substance provides: That when any board of health of any city shall declare, by resolution, that it is necessary to establish a hospital for persons suffering from contagious diseases, and setting forth the estimated cost thereof, a copy of

such resolution shall be transmitted to the financial board of such government, which board shall make an appropriation in cities of over one hundred thousand population of a sum not exceeding $100,000 for the purchase of land, if required, and for furnishing a suitable building or buildings for such board of health.

On March 17th, 1900, the Newark board of health appointed a committee to prepare a resolution in pursuance of the above act, and to lay the resolution before the common council. In May, 1901, the board of health resolved to ask the common council for an appropriation of $100,000 for the purpose of buying the necessary land and building thereon an isolation hospital. On September 12th, 1901, the common council resolved that $17,500 be appropriated to the purchasing of a plot of land, and on November 7th this resolution was rescinded. It was intended that this plot should be used as a site for a hospital, but the project was abandoned. It does not appear that any resolution was ever presented to the common council in conformity with the provisions of section 1 of the act of 1900. That act, however, is mandatory that the common council shall appropriate such sum up to $100,-000 as may be certified by the board of health. If the board of health had the power to incur expenses in anticipation of the appropriation which it had the right to demand, it might be conceded that such expenses would become a municipal debt.

The plaintiffs insist that the board of health was invested with the implied power to incur the present debt, although incurred before any resolution was passed by the board of health, because the services rendered were essential to enable the board of health to frame its resolution asking for the appropriation.

The act, it is perceived, provides that the resolution to be certified by the board of health, shall not only state that it is necessary to establish a hospital, but shall set forth the estimated cost thereof. It is insisted by the plaintiffs that the plans and specifications for the proposed structure were requisite for the purpose of making an estimate on the cost of its

erection, and that therefore the implied power to incur expenses for such plans and specifications, preparatory to the adoption of the resolution, was vested in the board of health.

It may be conceded that the board of health had the right to incur reasonable expenses for obtaining such expert information as was necessary to furnish a basis for an accurate estimate of the cost of the proposed structure; and it may be conceded that no accurate estimate could be made by the board of health, or by the experts for the board of health, without some plans or specifications first prepared. The question nevertheless remains whether the plans and specifications prepared by the plaintiffs were necessary or useful for this purpose.

The maximum sum to be appropriated for the purpose of purchasing a site and erecting a building was $100,000. The board of health and the plaintiffs knew, or were bound to know, the limitations upon the ability of the board of health to contract, and the common council to appropriate money for this purpose. The plaintiffs, instead of preparing plans and specifications for a building, the cost of which would be within the statutory limit, presented plans and specifications for a building which would cost $198,236, which, with commissions, would amount to over $200,000, exclusive of the cost of the land for a site. The plans and specifications were not designed as a basis for calculating the cost of a building which could be erected for $100,000 or less. They were intended as specimens of what the architects conceived to be a perfectly equipped hospital, to cost whatever was required to erect and equip such an edifice. As an exhibit, it might be of value for the purpose of influencing future legislation to increase the power of common council to make appropriations for hospital buildings; but the board of health had no power to bind the city to pay for such exhibits. For the purpose for which it might be conceded the board of health had power to bind the city to pay, the plans and specifications were of no value whatever. It is manifest that from them no estimate of the cost of a less expensive structure can be made.

The argument of counsel for plaintiffs that these plans can

be simplified, or a portion of the structure eliminated so that an estimate can be made, is unsubstantial.  Mr. Ely himself says it is impossible to use these plans in the construction of a hospital to cost less than $100,000, and he says that an alteration of these plans to come within the $100,000 limit could be done only by changing the entire nature of the structure, and by practically drawing new plans.

We think, therefore, that the work done by the plaintiffs was entirely aside from any work which the board of health had the power to contract for; that the work is of no value for the purpose for which the board of health may have had power to contract, and that the nonsuit was right.

Judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J.   15.

*For reversal*—None.