ANNIE ESTELL BOURGEOIS, PLAINTIFF AND APPELLEE, v. THE BOARD OF CHOSEN FREEHOLDERS OF ATLANTIC COUNTY, DEFENDANT AND APPELLANT.

Argued June 6, 1911—Decided October 24, 1911.

A contract entered into on behalf of a municipality by its unauthorized agent in excess of the powers granted to the municipality, or without observing the conditions or limitations imposed on the exercise of a granted power, cannot be ratified by the corporation, nor can it by any act of recognition raise an implied promise to carry it out, for the reason that it is without power to make an express promise, and the law will not in such case raise one by implication, but where the contract of the unauthorized agent is one which the corporation may lawfully make, it can by ratification, or by any efficient dealing with the subject matter amounting to an affirmance of the contract and an appropriation of its benefits to public use, create a situation from which an implied promise to pay may arise.

On appeal from Atlantic City District Court.

Before Justices SWAYZE and BERGEN.

For the appellant, *Garrison & Voorhees.*

For the appellee, *Bolte & Sooy.*

The opinion of the court was delivered by

BERGEN, J. The plaintiff, a married woman, carrying on business in her own name, sold and delivered to the county of Atlantic lumber for the reconstruction and repair of certain bridges. The contract on behalf of the county was made by the husband of the plaintiff, who was then one of the members of the board of chosen freeholders of the county of Atlantic, and the price agreed upon was $45 per thousand feet. It is not disputed that the quantity of lumber claimed to have been delivered was in fact delivered, it having been inspected and measured by the bridge committee of the board of chosen freeholders, and the only objection to payment when the bills were presented related to the price, the defendant claiming that the market price of such lumber was $40 per thousand feet, and the bridge committee, after it had made its inspection of the lumber, recommended that $5 be deducted for each thousand feet of lumber. The defendant having refused to pay at the rate charged by the plaintiff, she brought her suit and recovered the judgment from which this appeal was taken.

The defendant assigns several reasons for reversal, the principal one being that the chosen freeholder who ordered the lumber was not authorized either by the statute or the board of chosen freeholders to make the contract. It is not claimed that the husband of the plaintiff, as freeholder, had any express authority from the board to purchase this lumber, and as the evidence shows that he did not observe the statute in making the repairs, which it permits to be made without express authority from the board, it was a purchase of materials for the use of the county by its unauthorized agent. Two classes of purchases were made, one for the repair of bridges exceeding in cost $50, but less than $200, and the other where the cost was less than $50. Section 2 of the act concerning bridges (*Gen. Stat.*, p. 305) authorizes the chosen freeholder of the township and the freeholders of two adjacent townships to make such repairs where the cost falls be-

tween $50 and $500, and section 3 of the same act authorizes the overseer of the highways and the resident freeholder of the township where the bridge is located, to make repairs where the cost does not exceed $50. The act of the legislature, approved in 1891 (*Pamph. L., p.* 137), commits the supervision of roads to the township committee and confers the duties of the overseer of the highways upon that committee, and repealed all inconsistent acts, so that the overseer of the highways no longer possessed any official authority, and this condition was recognized by the revisers of the Township act of 1899 (*Pamph. L., p.* 372), who omitted to designate the office of overseer of the highways as one which the voters might fill at the township election, although such officer had been theretofore named as elective, and the office has been held to have been abolished. *Kinmouth* v. *Township of Wall,* 44 *Vroom* 440.

Under section 3 of the Bridge act power to make repairs at a cost not exceeding $50 without the authority of the board of chosen freeholders, is given to the freeholder and the overseer of the highways of the township where the bridge is located. The language used in conferring the power being: "It may be lawful for the overseer of the highways within whose limits and division the same may be and the two chosen freeholders of said township, or a major part of them, to direct such bridge to be built, rebuilt or replaced and to superintend or contract for the doing thereof," and it may be perhaps questionable whether when the legislature abolishes the office whose occupant is empowered to exercise a power jointly with another, the latter continues to be endowed with the power so jointly conferred, but it is not necessary to solve this question in the present case, for some of this lumber was purchased for repairs exceeding in cost $50 without the express sanction of the board or the concurrent action of the freeholders of the "two next adjacent townships" and therefore unauthorized. As the chosen freeholder in the present case did not observe the statute, in the purchase of plaintiff's lumber, where the expense of the repairs exceeded $50, his act was beyond his statutory authority, and would not bind the board unless it as-

sented thereto and participated in the application of the material for the benefit of the county, and if it did so, an implied promise to pay would arise if the power to purchase has been conferred by statute upon the board.

The board not having directed the purchase, and therefore not chargeable with an express promise, the only question is, did it subsequently so deal with the material as to raise an implied promise to pay for it? In *Hackettstown* v. *Swackhamer,* 8 *Vroom* 191, the municipality was without power to borrow money, but its treasurer having borrowed funds gave the promissory note of the corporation for the sum borrowed, which was used for the benefit of the municipality. This court held that there could be no express promise to repay, because the municipality was without the power to borrow money, and therefore such promise would be illegal, and the law would raise no implied promise because "the corporation has not the competency to make the promise thus sought to be implied."

In *Cory* v. *Freeholders of Somerset,* 15 *Vroom* 445, 455, the court said: "The rule of law is, that it is only when the corporation has the right to enter into the given contract that it can legalize it after it has been performed under the authority of its unauthorized agents," and in the same case it was held that notwithstanding the Bridge act which authorized the resident member to repair and construct bridges not exceeding in cost $50 the board of freeholders have the supervision of all bridges, whatever the cost may be, and have competent authority to validate payments for work of this description done in good faith, the full benefit of which has enured to the public, even if there was a defect in the authority under which such expense had been incurred, Chief Justice Beasley saying: "The opposite view would often work inconvenience and injustice, of which this case, in the aspect of it now under consideration, presents a conspicuous example, for if the defendant has done the work in question at fair prices, in the belief that it had been legally ordered, and has been paid for it, and such payment has the sanction of the board of freeholders, still, according to the construction acted on at the trial, he

could not retain such moneys, and nothing short of an act of the legislature could enable him to do so. It would be much to be regretted if these public bodies were without the power of doing ordinary justice in these affairs which must occur not infrequently."

In the case now under consideration the board of freeholders undoubtedly had the right to purchase this material, for it has supervision of all bridges and of their reconstruction and repair, and if this material had been ordered by the board, there could be no doubt of its liability to pay for it.

In the case of *Car Spring Co.* v. *Jersey City,* 35 *Vroom* 544, there were two classes of bills against the city for materials furnished, neither of which was ordered by the board of street and water commissioners, the proper authority, but by their agents. As to one class the board adopted the purchase and ordered its payment which act was held to be a ratification, and the city made liable thereby. The other class was held not recoverable, because the board of street and water commissioners had no knowledge of the purchase, receipt or use of the goods. The Chancellor, who delivered the opinion of the Court of Errors and Appeals, said that it was an open question whether, if the board which had the power to bind the city had known of the purchase, acceptance and use of the goods, an implied promise would have arisen under the doctrine laid down in *Hackettstown* v. *Swackhamer, supra,* and he expressed his opinion that it would not, but this expression was *obiter,* as the solution of that question was not required in the determination of the case under review.

In *Jersey City Supply Co.* v. *Jersey City,* 42 *Vroom* 631, it appeared that the city had no power to contract except through the board of fire commissioners, and as that board neither ordered nor had knowledge of the purchase, saving a void resolution approving payment, it was held that no express promise was shown, and that without knowledge of the purchase or lawful action by the board approving it, no implied promise arose.

The rule which these cases seem to establish is that a contract entered into on behalf of a municipality by its unau-

thorized agent in excess of the powers granted to the municipality, or without observing the conditions or limitations imposed on the exercise of a granted power, cannot be ratified by the corporation, nor can it by any act of recognition raise an implied promise to carry it out, for the reason that it is without power to make an express promise, and the law will not in such case raise one by implication, but where the contract of the unauthorized agent is one which the corporation may lawfully make, it can, by ratification, or by any efficient dealing with the subject-matter amounting to an affirmance of the contract and an appropriation of its benefits to public use, create a situation from which an implied promise to pay may arise. Therefore it is necessary to consider whether the board of freeholders have so dealt with the lumber furnished by the plaintiff as to raise an implied promise to pay for it, notwithstanding it was ordered by its unauthorized agent. The minutes of the board show that the bridge committee reported to the board "that lumber bill of A. Estell Bourgeois for several thousand feet of lumber and charged at $45 per thousand feet had been delivered at various bridges, but on some of the bridges the work was not yet completed, and the committee is of opinion that not more than $40 per thousand feet should be paid for bridge plank, and the committee recommend $5 be deducted from each thousand feet of lumber delivered by Mrs. Bourgeois, if the board can legally pay the bill, and Mr. Enderlin moved that all bills be held until such time as all work on bridges is completed. Mr. Bourgeois wanted to know whether this work could be finished under the old rules of 1910, or the new rules to be adopted at this meeting. The solicitor stated that as the work had been started on the bridges under the old rules, it was perfectly proper that the work should be completed under the same rules. The roll call on Mr. Enderlin's motion was had and the motion of Mr. Enderlin was adopted." The Mr. Bourgeois referred to in the above minutes was the freeholder who had undertaken to repair and reconstruct the bridges with the material ordered by him from the plaintiff. We think that the

foregoing action of the board amounted to an approval of the repairs and reconstruction and an assent to the use of the materials furnished by the plaintiff for that purpose, sufficient to raise an implied promise to pay for the lumber such a price as it was reasonably worth. The trial court found that such reasonable worth was $45 per thousand feet, and there is evidence which justifies that finding.

The appellant raises other objections which require consideration. It urges that the action was prematurely brought because the bridge committee, to which the bills for the lumber were referred, had not had time to investigate and report to the board the actual quantity of lumber used. The evidence shows that this committee had measured the quantity of lumber furnished by the plaintiff for the use of the county, but was unwilling to recommend payment at the price claimed by the plaintiff, in which recommendation the board apparently concurred, and it sufficiently appears that the committee did not intend to report the bills for payment unless a deduction of $5 per thousand feet was agreed to, in fact, that appears to have been the only matter in dispute, and we therefore think there is no force in this objection. The defendant had accepted the lumber and used it for the benefit of the county, but refused to pay more than $40 per thousand feet, while plaintiff demanded $45.

The next point urged by the appellant is that rule number 10 of the board of chosen freeholders, which permits a single freeholder to make repairs to bridges in their respective districts to the extent of $50 during the interval of the stated meetings of the board, and under like conditions to make repairs to the extent of $100, "with the approval of one member of the bridge committee or the freeholder of the adjoining district," amounts to the delegation by the board of its discretionary power which is not permissible. It is not necessary to determine this question for the reason that the rule is a nullity, because it undertakes to confer a power not given by the statute. Section 2 of the act concerning bridges passed in 1846, authorizes the construction and repair of bridges cost-

ing between $50 and $500 by the joint action of the free-holder of the township and the freeholders of the two adjacent townships, and the board has no power to empower a single member, with the approval of one freeholder, to expend more than $50 when the statute requires the joint action of the free-holder of the township and the freeholders of the two adjoining townships, to incur any expenditure in excess of $50. A rule authorizing the construction or repairs of bridges in a manner different from that prescribed by the act conferring such power has no legal support.

The next point relied upon by the appellant is that it is contrary to public policy to allow a husband, as a member of the board of freeholders, to contract with his wife for materials to be furnished to the county, because by virtue of a supplement to "An act for the punishment of crimes," approved May 7th, 1907 (*Pamph. L., p.* 292), it is made a misdemeanor for any member of the board of freeholders to be directly or indirectly concerned in any agreement or contract for the construction of any bridge or other improvement made at the expense of the public, or to be directly or indirectly interested in furnishing any goods, supplies or property of any kind to the county. The trial court found that there was no evidence to show that the husband was the agent of the wife in furnishing the lumber, but, on the contrary, that he was the agent of the county, and therefore not interested in the sale or purchase. We are of opinion that the relations existing between a man and his wife are of such a nature as to raise a serious question whether he was not a freeholder indirectly concerned in the furnishing of material to be paid for by the public, but it is not necessary to consider this, for the law appealed to does not avoid the contract, it simply renders the member of the board, who makes a contract forbidden by the statute, liable to prosecution for a misdemeanor, and such action by a freeholder would not deprive the wife of her right of recovery if the board of freeholders should afterwards assent to the use of the material or should accept it and appropriate it to the proper public use.

The next objection is based upon the action of the trial court in overruling all evidence tending to show that the repairs to the respective bridges exceeded $50, the opinion of the trial court being that under the act of 1898 (*Pamph. L.*, *p.* 437), a member or some of the members of a board of chosen freeholders are authorized to construct and repair bridges to the extent of $200 without being first authorized by the board, and that section 3 of the act of 1846 entitled "An act respecting bridges" (*Gen. Stat.*, *p.* 305), which provides that when the expense of erecting, rebuilding or repairing a bridge shall not exceed $50, such improvement may be made by the overseer of the highways and the chosen freeholders of the township, or a majority of them, was abrogated by the act of 1898, and that now the member representing the township where the bridge is situated may make repairs not exceeding in cost $200, without calling upon the chosen freeholders of the two adjacent townships to act with him. The act of 1898 is a supplement to the act respecting bridges, and provides that no bridge shall hereafter be erected, rebuilt or repaired by any member or members of the board of chosen freeholders where the expense thereof shall exceed the sum of $200, unless the same shall have been authorized by the board of chosen freeholders of such county. We think that this supplement does not affect section 3 of the act of 1846, providing for an expenditure not in excess of $50, but applies to section 2 of that act, and authorizes the reconstruction or repair of bridges by the members of the board designated in that section, only where the cost does not exceed $200 instead of $500, as permitted by the act of 1846, and that it was not the purpose to grant increased powers, but rather to limit those previously granted. The action of the trial court in this behalf was therefore erroneous, but it was harmless because it was immaterial in this case whether the cost exceeded $50 or not, as the freeholder was acting without any intention to observe the law, but under a void rule of the board, and subsequent approval of his action and appropriation of the material by the board was within their power whether the cost was below or above $50.

The only other point remaining to be considered in this matter is whether the trial court was justified in including in the recovery $39.02 for cedar lumber furnished December 31st, 1910. The appellant objects to this allowance upon the ground that no bill or account for it was ever properly presented to the board, the objection being that it was not verified, and it is not claimed by the plaintiff that the bill presented was verified. The act in relation to the expenditure of public money by municipal corporations (*Pamph. L.* 1871, *p.* 92), declares that it shall not be lawful for the board of chosen freeholders of any county in this state to disburse any of the moneys of the county to any person unless the person claiming or receiving said moneys shall first present to the party paying a detailed bill of items with the affidavit of the party claiming payment of said bill that the same is correct. We are of opinion that under this act a bill against the county is not mature, and no right of action arises thereon until the claimant shall have presented a detailed bill of items of the demand duly verified as required by the act, without which they are forbidden to pay. *Curley* v. *Freeholders of Hudson,* 37 *Vroom* 402. Therefore, the trial court committed an error in including in the judgment the amount of this unverified bill.

For this latter reason the judgment will have to be reversed and a new trial ordered.