HOBOKEN LOCAL NO. 2, NEW JERSEY STATE PATROL-
MEN'S BENEVOLENT ASSOCIATION, AN UNINCORPO-
RATED ASSOCIATION, CONSISTING OF MORE THAN
SEVEN MEMBERS, PLAINTIFF, v. CITY OF HOBOKEN,
A MUNICIPAL CORPORATION OF THE STATE OF NEW
JERSEY, DEFENDANT.

Decided May 23, 1945.

For the plaintiff, *Rothbard & Talisman.*

For the defendant, *John J. Fallon.*

ACKERSON, S. C. C.   Plaintiff, an unincorporated association, sues as the assignee of the claims of sixty-six members of the uniformed paid police department of the City of Hoboken for compensation alleged to be due to them for serving one day in each week, from March 12th, 1935, to the institution of this action, in excess of the limitation of six days of service in any one week prescribed by *R. S.* 40:47–17; *N. J. S. A.* 40:47–17.

The statute (*R. S.* 40:47–17; *N. J. S. A.* 40:47–17) provides as follows:

"The days of employment of uniformed members of any paid police department in any municipality, * * * shall not exceed six days in any one week, but in case of an emergency the officer, board or other official having charge or control of all such police departments shall have full authority to summon and keep on duty any and all such officers during the period of the emergency, but within twelve months after such emergency each uniformed member of such police department shall be given a day off duty for each extra day so served by him during the emergency."

The matter is presently before the court on defendant's motion to strike the complaint on the grounds of its alleged legal insufficiency, and because an unincorporated association has no legal capacity to hold personal property or to contract, and, therefore, the aforesaid assignments of claims to the plaintiff are invalid and ineffective to sustain this action.

Two theories for recovery are advanced to support each individual claim to compensation, and they are set forth in separate counts in the complaint. In other words each assigned claim is set up in two separate counts.

In the first count respecting each of said claims, after stating the employment of the particular policeman from March 12th, 1935, to the institution of this action, it is alleged that "by virtue of the statute" (R. S. 40 :47–17; N. J. S. A. 40 :47–17) it became the duty of the defendant to regulate said employment in accordance therewith. It is then alleged that it also "became the duty of the defendant by virtue of the statute in such case made and provided, as aforesaid, in the event that it employed the said [policeman] for more than six (6) days in any one (1) week to compensate [him] for the said extra day that it so employed him." It is further alleged that the defendant employed the said policeman and that he performed services for the defendant "for seven (7) days in each week" during all of the aforesaid period, "and the said defendant failed to give [him] days off for each extra day served * * * during any emergency. It then and there became the duty of the defendant * * * to compensate the said [policeman] for the reasonable value of the * * * services he rendered on the 7th day of each week * * *" as aforesaid, which has not been done.

Obviously the cause of action thus attempted to be asserted is predicated solely on the aforesaid statute. The question presented is: Does this statute give rise to a cause of action to the particular policeman because he was required or permitted to work more than the scheduled six days a week, and in case of an emergency was not given a day off for each extra day served during such emergency?

It is a well settled rule, that a person accepting a public office with a fixed salary is bound to perform the duties of the office for the salary. He cannot claim additional compensation for the discharge of these duties, even though the salary may be a very inadequate remuneration for the services. Nor does it alter the case that by subsequent statutes or ordinances his duties are increased and not his salary. His undertaking is to perform the duties of his office whatever they may be from time to time during his continuance in office for the compensation stipulated—whether these duties are diminished or increased. Whenever he considers the compensation inadequate, he is at liberty to resign. *Evans* v. *City of Trenton,* 24 *N. J. L.* 764, 766; *State* v. *Paterson,* 40 *Id.* 186; *Knight* v. *Freeholders of Ocean,* 48 *Id.* 70; 3 *Atl. Rep.* 344; *Seymour* v. *Orange,* 74 *N. J. L.* 549; 65 *Atl. Rep.* 1033. A policeman is a public officer within this rule. *Speck* v. *Borough of Fairview,* 7 *N. J. Mis. R.* 410; 145 *Atl. Rep.* 618.

Plaintiff acknowledges this rule but claims that the aforesaid statute (*R. S.* 40:47–17; *N. J. S. A.* 40:47–17) renders it inapplicable in the present case because, as stated in its brief, the intent of the legislature was to correct the mischief of the old rule whereby policemen could be required "to work for unusually lengthy periods without extra compensation," and the statute, by defining the regular working time of such officers, authorizes recovery of compensation for overtime service.

The difficulty with this contention lies in a misconception of the purpose of the legislation in question. It was not designed, as plaintiff supposes, to increase the compensation of policemen for overtime service as in that type of statutes commonly referred to as "wages and hours" legislation, but rather

to protect the health and increase the efficiency of policemen by requiring time off for rest, pleasure and recreation. Therefore, the cases construing statutes fixing a minimum wage, or statutes providing for or permitting overtime pay, are not applicable to the situation before us. This statute relates exclusively to the health of the policemen and not to their compensation. That this is so is manifested by the fact that where overtime service is permitted in cases of emergency, the act does not provide for extra monetary compensation therefor, but instead provision is made for a day off for each extra day served during such emergency. This statute makes no provision for any other recompense and clearly does not provide that the municipality must compensate a policeman in money if he does not get his days off as required thereby. It gives no civil remedy or private right of action for overtime service. This statute clearly indicates, as already observed, that the sole purpose of its enactment was to provide for the health and efficiency of policemen. *Pericin* v. *Denburg's Modern Bakery,* 130 *N. J. L.* 547; 33 *Atl. Rep.* (*2d*) 825. The case last cited is in point and controlling upon the proposition that the statute in question does not confer a right to compensation for overtime services. It is also authority for the proposition that, even if this count had not been based upon a supposed right conferred by statute, and excluding the averments to that end, the remaining allegations would not give rise to a cause of action under the common law for damages in *quasi* contract on a *quantum meruit* basis. However, the question of an implied contract on common law principles will be more fully and appropriately dealt with hereafter in considering plaintiff's second theory of recovery.

Turning now to the second count respecting the claim of each individual policeman, we find the pertinent averments to be as follows: "On the aforesaid date of March 12th, 1935, the said [policeman], and the defendant did agree that" the latter "should render services as a uniformed member of the Police Department of the defendant, and to be compensated as theretofore, but that the work week should consist of six (6) days only. The agreement further provided that in the event the said [policeman] should render services for a 7th

day, defendant would compensate him therefor at the reasonable value thereof." That services were rendered "on the defendant's promise to pay for same for seven (7) days in each week from the aforesaid date of March 12th, 1935, to the institution of this suit, but in violation of its agreement as aforesaid [defendant] has failed to compensate said [policeman] for work, labor and service rendered on the 7th day of each week" during said period. It is not alleged, however, that any of the services performed on the seventh day of any week were rendered during an emergency.

The question presented by this pleading is whether, in view of the aforesaid statute (*R. S.* 40:47–17; *N. J. S. A.* 40:47–17), the agreement of a municipality engaging and promising to pay for overtime services of the members of its police department can be enforced against it?

As already observed this statute provides that "the days of employment" of such policemen "shall not exceed six days in any one week" except in cases of emergency when a day off is allowed for each extra day served during such emergency. The presumption is that the word "shall" in a statute is used in an imperative and not in a directory sense. If a different interpretation is sought, it must rest upon something in the character of the legislation or in the context which justify a different meaning. *Haythorn* v. *Van Keuren & Son,* 79 *N. J. L.* 101, 105; 74 *Atl. Rep.* 502; *State* v. *Wilcox,* 2 *N. J. Mis. R.* 320. It was used in a mandatory or imperative sense in this statute which embodies the public policy of protecting the health and efficiency of regularly employed policemen. As was said by our Court of Errors and Appeals in the case of *John J. Carlin, Inc.,* v. *O'Connor,* 126 *N. J. L.* 243 (at *p.* 247); 17 *Atl. Rep.* (2*d*) 584, 586, "Better working conditions for labor have always been a real concern of the legislature. Such, in fact, can be said to constitute a public policy of this state."

To effectuate this public policy in the case of regularly employed policemen, *R. S.* 40:47–17; *N. J. S. A.* 40:47–17, places a definite limit on the authority of municipalities with respect to their employment. A municipality is without power to exceed the limitation upon continuous service therein fixed.

It is well settled that a municipal corporation can act only through its authorized agents, and that where the powers of the corporation or its agents are subjected by law to restrictions with respect to the subject-matters of contract, or to restrictions as to the form and method of contracting that are limitations upon the power itself, the corporation cannot be held bound by either an express or implied contract in defiance of such restrictions. In such cases only a limited power is granted, and consequently an act done beyond the scope of such power is *ultra vires* and void. *Jersey City Supply Co.* v. *Jersey City,* 71 *N. J. L.* 631, 633; 60 *Atl. Rep.* 381; *Bourgeois* v. *Freeholders of Atlantic,* 82 *N. J. L.* 82, 86, 87; 81 *Atl. Rep.* 358; *Hackettstown* v. *Swackhamer,* 37 *N. J. L.* 191; *Ely* v. *Newark,* 76 *Id.* 532; 70 *Atl. Rep.* 159; *Fletcher* v. *Board of Education,* 85 *N. J. L.* 1; 88 *Atl. Rep.* 834; *McLean* v. *Newark,* 94 *N. J. L.* 401; 110 *Atl. Rep.* 692; *Potter* v. *Metuchen,* 108 *N. J. L.* 447; 155 *Atl. Rep.* 369; *Sleight* v. *Board of Education of Paterson,* 10 *N. J. Mis. R.* 523; 159 *Atl. Rep.* 707; 38 *Am. Jur.* 182, § 506.

The case *sub judice* is different from a suit against a private corporation on a claim arising out of an *ultra vires* contract. The defendant in this case is a municipal corporation. The alleged agreements out of which the plaintiff's claims arise are *ultra vires,* not because of the provisions of some private charter, but because they violate the public policy of this state as expressed in the aforesaid statute. *Eckert* v. *West Orange,* 90 *N. J. L.* 545 (at *p.* 549); 101 *Atl. Rep.* 269. The evil aimed at by this statute is the confining work of policemen and its effect upon their health and efficiency, and the public policy expressed with respect thereto cannot be maintained by upholding contracts made in violation thereof. This is emphasized by contrasting the present situation with that involved in the case of *John J. Carlin, Inc.,* v. *O'Connor, supra,* 126 *N J. L.* (at *p.* 247); 17 *Atl. Rep.* (2d) 586.

Where a contract is made by a municipal corporation which is not warranted by the statutory authority conferred upon it, the governing body of the corporation has at all times the right to treat the contract as void and to refuse compliance therewith. A reason frequently advanced in support of this

rule is that since the powers of a municipal corporation are wholly statutory, every person who deals with such a body is bound to know the extent of its authority and the limitations on its powers. It is generally held that when a contract has been entered into by a municipal corporation with respect to a subject-matter which was not within its corporate powers, or which it is authorized to make only under prescribed conditions, within prescribed limitations, or in a prescribed mode or manner, the corporation cannot be held liable on the contract regardless of whether the other party thereto has fully carried out his part of the agreement. The corporate powers of such a corporation cannot be extended by the doctrine of estoppel. 38 *Am. Jur.* 182, § 506; 38 *Id.* 202, 203, 204, § 522; *Swackhamer* v. *Hackettstown, supra; Hill Dredging Co.* v. *Ventnor City,* 77 *N. J. Eq.* 467; 78 *Atl. Rep.* 677; *Jersey City Supply Co.* v. *Jersey City, supra; Eckert* v. *West Orange, supra; Sleight* v. *Board of Education of Paterson, supra.*

Furthermore, the law will not permit recovery on a *quantum meruit* in a suit against a municipality where an express contract would be *ultra vires.* Recovery has frequently been allowed on a *quantum meruit,* where there has been some unimportant irregularity in the proceedings, or an innocent mistake as to some matter of fact. But the law will not raise an implied promise which would, as in this case, be in direct defiance of an act of the legislature. Otherwise this statute (*R. S.* 40:47–17; *N. J. S. A.* 40:47–17), which applies to all municipalities alike, and represents a definite public policy, could be nullified by proof of the fact that the particular policeman had worked overtime and therefore was entitled to what such work was reasonably worth. It is a fallacy to argue that the law will raise an implied power to pay for the services after they have been rendered. The impediment to such a theory is that the municipal corporation has not the power to make the promise thus sought to be implied. *Eckert* v. *West Orange, supra,* 90 *N. J. L.* (at *p.* 550); 101 *Atl. Rep.* 269. To hold otherwise in this case would amount to judicial repeal of a beneficent public policy established by legislative authority.

So, whether the plaintiff's claims are based upon the statute, or upon express or implied contract, they cannot be enforced for the reasons above expressed, and the complaint will, therefore, be stricken as frivolous because not setting forth a cause of action. The result thus reached makes it unnecessary to consider whether the assignments of the claims to the plaintiff are invalid and ineffective to sustain its right of action.

A form of order may be presented in accordance with the conclusion hereinabove expressed.