## Booker v. City of Philadelphia et al.

*A. L. Shapiro*, for plaintiff.

*M. Kline, J. L. Stern* and *F. F. Truscott*, for defendants.

KUN, P. J., May 25, 1953.—Plaintiff filed suit against the city to recover $1,292.86 allegedly due him under a so-called moral obligation ordinance passed by city council. Because cognate proceedings were first instituted in Common Pleas Court No. 1 (hereinafter referred to), the above case was transferred to us for disposition, as the interpretation of our decree therein is involved. Plaintiff has asked for judgment on the pleadings. The following appears from the record:

On July 15, 1950, plaintiff and some 50 other city employes were dismissed from their positions by their respective department heads for violations of the pro-

visions of sections 23 and 25 of article XIX of the city charter then in force, the Act of June 25, 1919, P. L. 581. Section 23 provides as follows:

". . . No officer, clerk, or employe of any city of the first class, or of any department, trust, or commission thereof, shall serve as a member of, or attend the meetings of, any committee of any political party, or take any active part in political management or in political campaigns, or use his office to influence political movements or influence the political action of any other officer, clerk, or employe of any such city, department, trust, or commission . . .

"Any person or persons who shall violate any of the provisions of this section shall be guilty of a misdemeanor, and shall, upon conviction thereof, be punished by a fine not exceeding five hundred dollars, and forfeit his office."

Section 25 of the charter provides in part as follows:

"Any officer, clerk, or employee of such city, or of any department, trust, or commission thereof, violating any of the provisions of this article, shall be *immediately dismissed* by the mayor or by the head of the department, trust, or commission in which he is employed. . . . *Any person dismissed under this section shall be ineligible for reappointment within two years to any position in the service of such city.*" (Italics supplied.)

Plaintiff was dismissed because he had become a member of a ward committee of a political party. It was required in that situation that the city employe be "immediately dismissed", and, further, that any city employe so dismissed should be "ineligible for reappointment within two years to any position in the service of (the) City." Moreover, the offending city employe was for the same reason subject to criminal prosecution. Following plaintiff's dismissal, an appeal

was made to the civil service commission then functioning which, notwithstanding the explicit provisions of the charter referred to, ordered the reinstatement of plaintiff on December 6, 1950. Harry K. Butcher, intervenor defendant in the present action, filed a bill in equity as a taxpayer on December 27, 1950, praying that the city controller and the city treasurer be restrained from issuing warrants and signing checks for salaries to plaintiff and the other dismissed employes. On the filing of the bill, the then city controller and city treasurer refused to sign checks thereafter for the pay of plaintiff and the other former city employes similarly situated who, nevertheless, on such plain notice that their right to continue as city employes was being questioned, persisted in endeavoring to continue their status as city employes: Butcher v. Clark et al., 77 D. & C. 66. The old civil service commission ordered the reinstatement of plaintiff on the erroneous assumption that the Act of July 29, 1941, P. L. 579, applied. This act gives the right to the commission to investigate the basis of discharge of any employe and to reinstate him on consideration of his acts and his record of service. It was so apparent to the court that this act had no application whatever to the case of a city employe dismissed for political activity, under sections 23 and 25 above referred to, that we entered a preliminary order in that case on February 19, 1951, pointing out that the direct, specific and mandatory provisions of the charter requiring the immediate dismissal of city employes for political activity were in effect self-executing, and required no consideration of the "causes" or the "basis" for the discharge of such city employe, excepting to ascertain whether or not the employe had in fact become a member of a political committee or otherwise violated the sections referred to. The only reason we did not enter

a final decree then was because the civil service commission had not made a full enough inquiry into and report on the status of each employe involved, as to political activity, and it was to make such a report so that no injustice would be done to any employe through a blanket order. However, plaintiff here never denied the basic fact that he had violated the law by becoming a member of a political committee.

Only recently, in the case of Lennox v. Clark, 372 Pa. 355, the present Chief Justice stated, at p. 371:

"It is an established principle of constitutional construction that, where a conflict exists between a specific constitutional provision which is applicable to a particular case and certain general provisions which, were it not for such conflict, might apply, the specific provision will prevail."

This applies with equal force to statutory construction. The Act of 1941, giving the civil service commission general authority to inquire into the validity of the causes in general for the dismissal of a city employe and to consider his length of service in determining punishment, in no way affected the specific provisions of sections 23 and 25 of the Act of 1919 requiring the immediate dismissal of employes engaged in political activity as therein provided. As we pointed out in that preliminary order:

"An employe could be most efficient in his field, and have the most excellent record, yet if he violated the mandate of the legislature with reference to 'political activity' as defined in the statute, he would have to be dismissed and not be reinstated within a two-year period. The two things have no relation to one another whatever. To adopt the view urged by the commission would make a mockery of the salutary provisions of the last mentioned sections of the act, and amount to a frustration of the legislative will therein expressed."

The validity and desirability of this kind of legislation was established by the case of Duffy v. Cooke, 239 Pa. 427. The only ground upon which the civil service commission could reinstate an employe so dismissed would be if it was determined that an error had been made in the factual question, namely, that the employe had not become a member of a political committee or otherwise violated the provisions of the sections of the act referred to. No such question was ever raised by plaintiff before the civil service commission, nor does he raise it here.

The authorities cited, relating to police and firemen cases and others in which "trials" must be had on "charges" of dereliction of duty of one kind or another, which hold that a dismissal is not effective until final judgment, are inapposite to cases arising under sections 23 and 25 of the Act of 1919, which require "immediate dismissal" in the case of violation of those sections. There may be a restoration to the job if in such case the basic factual condition (membershp on a political committee, etc.) is found not to have existed, but if found to have existed, dismissal is operative from its date—no other meaning can be given to the statutory directive requiring "immediate dismissal" —whereas in cases of "charges" of misconduct in other respects, "dismissal" is not effective until final judgment in the matter.

On August 10, 1951, the old city council undertook to pass an ordinance to pay plaintiff and the other city employes dismissed for political activity, for the entire time they performed services, notwithstanding the above-stated prohibitory provisions of the charter. While the charter, in express terms, prohibited the reëmployment within two years of such employe dismissed for political activity, council nevertheless undertook to pay for services rendered within that prohibitory period—a clear attempt to circumvent the

mandate of the law. Council assumed to appropriate pay for plaintiff on the basis of a so-called moral obligation. The suit here is to endeavor to enforce plaintiff's claim thereunder. Harry K. Butcher, who was plaintiff in the bill in equity filed in the proceedings above-mentioned, was granted leave to intervene in the present proceedings as a party defendant. There have been some cases in Pennsylvania which have recognized the "moral obligation" principle, where there has been a mere failure to comply with certain procedural requirements on the part of claimant, or where he has rendered either service or furnished material to the governmental authority in good faith and under some misapprenhension of the situation. It is important in this connection to point out the distinction between laws and ordinances which are merely invalid and those which are completely void. In McQuillin, Municipal Corporations, secs. 29.02, 29.104 and 29.111, it is pointed out that if a contract made by a municipal corporation is merely invalid, as for example where it contains errors of form, or is made by the wrong officer, it can be ratified thereafter, or an action of quasi-contract can be maintained upon it, or estoppel to deny its validity can be pleaded by the opposing party. On the other hand, if a municipal contract is either ultra vires, i.e., beyond the power of the corporation to make, or is one which is *actually prohibited by statute*, it is completely void and unenforcible, and the municipality cannot be held accountable either on a theory of implied contract or of quasi-contract even if benefit accrues to it. In the same work, at section 29.04, many Pennsylvania authorities are cited on the subject. An implied contract to pay for either services or material furnished to a municipality upon the theory of a quantum meruit, or on a so-called moral obligation, cannot arise in the face of a statutory mandate to the contrary: Willis

Bancroft, Inc., v. Millcreek Township, 335 Pa. 529. An interesting authority is also found in Hoboken Local No. 2, N. J. State Patrolmen's Benevolent Association v. Hoboken, 23 N. J. Misc. R. 334; 44 A. 2d 329, in which city authorities undertook to pay a patrolman extra compensation beyond that permitted by law, for so-called extra work. The court said, at p. 341:

"Furthermore, the law will not permit recovery on a quantum meruit in a suit against a municipality where an express contract would be ultra vires. Recovery has frequently been allowed on a quantum meruit, where there has been some unimportant irregularity in the proceedings, or an innocent mistake as to some matter of fact. But the law will not raise an implied promise which would, as in this case, be in direct defiance of an Act of the Legislature. Otherwise this statute . . ., which applies to all municipalities alike, and represents a definite public policy, could be nullified by proof of the fact that the particular policeman had worked overtime and therefore was entitled to what such work was reasonably worth."

It may be said in general that the ordinance by which city council undertook to pay plaintiff and other city employes similarly situated, for the entire period in which they saw fit to work after their dismissal for political activity (i.e., from the date of their reinstatement by the civil service commission to the date of the final decree in the equity case) must be considered void, because it is contrary to the express mandate of the statute that such employes had to be immediately dismissed if they were found to have joined a political committee or committed acts of political activity proscribed by the statute, and also because the same statute prohibited the reëmployment of such dismissed employes by the city in any department during a period of two years following their initial dismissal.

However, we think there is one basis upon which plaintiff and the others similarly situated may be permitted to recover pay for a portion of the time that they worked for the city. When the old civil service commission ordered the reinstatement of plaintiff on December 6, 1950 (although a clearly erroneous decision) plaintiff may be considered as having resumed his employment under some color of authority, because the civil service commission was somewhat of a quasi-judicial body. It is this special circumstance only that permits any kind of consideration of plaintiff's claim. However, when this court in the equity proceedings above-mentioned entered its preliminary order on February 19, 1951, pointing out the illegality of the civil service commission's order, it was constructive notice to plaintiff and to the other such employes similarly situated that they were continuing their employment at their own risk, especially as the controller and the treasurer had refused from December 27, 1950, to make any payments to them. Their continuation of their employment after that was in actual defiance of the law. On a strict application of the reasoning in the case of Justice v. Philadelphia, 37 Pa. Superior Ct. 267, plaintiff's right to recovery could well be limited to that date, that is, the date when the controller and the treasurer refused to make any further payments to him, because he was thereby put on notice that his right to compensation was being tested. In that case the question arose as to the right of the Law Department of Philadelphia to hire a certain clerk. The dispute was between the city solicitor and the civil service commission newly created by recent legislation. Plaintiff in that case worked during a period of confusion on the subject, but when the city treasurer refused to honor any warrants for his salary, the clerk resigned. The court upheld the right of council to pay the clerk's salary for services rendered

in good faith, on the advice of the city solicitor, and in the confused situation by reason of the new legislation. Plaintiff there did not persist in working after the city treasurer refused to honor warrants for his pay, as did plaintiff in the case before us, not only after the city treasurer and the city controller refused to pay him, but even after this court entered its preliminary order of February 19, 1951. No new legislation was involved in the matter before us. It had been the law by statute for nearly 50 years that city employes were prohibited from engaging in political activity, and were subject to immediate dismissal therefor, and could not be reappointed within two years after such dismissal, and were even subject to criminal prosecution. Plaintiff, a city employe, was charged with knowledge of the law, as everyone else is, and if he joined a political committee he, to all intents and purposes, by his own act, separated himself from the civil service, because the law required his immediate dismissal on that ground, and he could not be reappointed for two years.

Plaintiff's motion for judgment on the pleadings for $1,292.86 must be refused. We are inclined, however, to extend to plaintiff the benefit of the utmost liberality in the interpretation of his situation, by permitting judgment for plaintiff for so much of his pay which accrued from December 6, 1950, the date his reinstatement was ordered by the civil service commission, and the current pay period in which the date February 19, 1951, fell, when this court entered its preliminary order in the equity proceedings above-mentioned, in which we declared the action of the civil service commission in reinstating plaintiff and other city employes similarly situated to have been invalid, contrary to law, and of no effect. Judgment for plaintiff, calculated on that basis by counsel for the parties, may be entered. This will give plaintiff about three sevenths of his

claim and the most he is, on any possible theory, entitled to. No doubt the claims of the other dismissed employes similarly situated will be disposed of on the basis of the same formula.