47 N.J. Super. 162 (1957)
135 A.2d 583
RICHARD SAMUEL, PLAINTIFF,
v.
THE CITY OF WILDWOOD, A MUNICIPAL CORPORATION, W. HARRY STEELE, JR., GEORGE W. KROGMAN AND BERNARD W. MAXWELL, COMMISSIONERS OF SAID CITY OF WILDWOOD, GEORGE R. BECK, COLLECTOR OF TAXES OF SAID CITY, AND ORAM HENRY, BUILDING INSPECTOR OF SAID CITY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided October 10, 1957.
*164 Messrs. Brown & Frank, attorneys for plaintiff (Mr. William Elmer Brown, Jr., appearing).
Messrs. Backer & Arkus, attorneys for defendants (Mr. Nathan C. Staller, appearing; Mr. Samuel Backer, of counsel).
HANEMAN, J.S.C.
Defendants have moved for the dismissal of this action under R.R. 4:42-2(b) on the ground that upon the facts and the law the plaintiff has shown no right to relief. The facts as they appeared at the time of this motion are as follows:
The defendant City of Wildwood, having acquired title to certain real estate within its corporate limits as a result *165 of the foreclosure of a tax sale certificate, adopted a resolution consistent with N.J.S.A. 40:60-26, authorizing the sale thereof. N.J.S.A. 40:60-26, as far as here material, reads as follows:
"The governing body of any municipality may sell any lands or buildings or any right or interest therein not needed for public use.

* * * * * * * *
All sales, either public or private, may be for cash or upon credit. * * * The governing body may also impose any restrictions on the use to be made of such land and any conditions of sale as to buildings or structures to be erected thereon, or as to the type, size, or other specifications of such buildings or structures, or as to demolition, repair, or reconstruction of buildings or structures, and the time within which such conditions shall commence or be concluded, or any other conditions of sale in the manner and to the same extent as any other vendor of real estate, whether such sale shall be made at public or private sale; provided, however, that any conditions for the payment of the consideration upon credit and the restrictions on the use to be made of the land and the conditions of sale shall be set forth at length in any advertisement of sale hereinabove required. * * *"
In accordance with the terms of said resolution, the following advertisement was printed and published in The Leader, a weekly newspaper published at Wildwood, in the County of Cape May:
"PUBLIC SALE OF LAND. By virtue of a resolution of the Board of Commissioners of the City of Wildwood, County of Cape May, New Jersey, adopted at a meeting of the said Board held on the twenty-first day of December, 1954, I shall cause to be exposed at public sale to the highest bidder on Monday, January 3, 1955, at the hour of 2:00 o'clock (E.S.T.) in the afternoon of that day at the Commissioners chambers in the said City of Wildwood the following lands and premises situate in the City of Wildwood, County of Cape May, State of New Jersey:
Block 78, Lots 1 to 10 inclusive, Third Ward, Minimum bid $30,000.00 (Full block 200' x 200' to be sold as one parcel.)
The terms and conditions of sale of the said lands shall be as follows: no bid will be received less than the minimum stated herein, twenty percent to be paid by the successful bidder in cash at the time of the sale, at which time an agreement of sale will be entered into, balance of the purchase money to be paid on or before 30 days from the date of the said sale. A further condition of sale shall be that modern stores and a motel or motels with ample off-street parking facilities provided, to be erected on said lands at *166 a minimum cost of $150,000.00, construction of which is to commence within ninety days from the date of sale and completed within one year from said date of sale. Plans and specifications for such construction and parking facilities shall be first approved by the Building Inspector and the Board of Commissioners and conform with all effective Ordinances and applicable city and state regulations. A performance and completion bond with surety approval by the Board of Commissioners, shall be submitted prior to commencement of such construction. Upon payment of the full purchase price and conforming and compliance with the conditions of sale, the proper officers of the said City of Wildwood will execute and deliver to the purchaser or purchasers or assigns a Bargain and Sale Deed conveying title free and clear of all taxes and other municipal assessments up to and including December 31, 1954. Said sale is subject to confirmation by the Board of Commissioners.
 GEORGE R. BECK
 Collector of Taxes."
On the date of the sale there were approximately 50 persons present in the commission chambers in the City of Wildwood. The bidding commenced at the established minimum price of $30,000 and proceeded with sharp competition until it reached the final price of $57,000. There were at least six bidders, one including Ward Bright, who bid as a representative of William H. Bright, Inc., Agent. During the sale about 20 different bids were made. One of said prospective purchasers continued to submit bids until the amount reached $41,000. When the price reached $47,000, two others had fallen by the wayside. A fourth ceased to bid somewhere between the latter price and the ultimate price of $57,000. A fifth continued to compete with the said Bright until Bright submitted the high bid of $57,000.
On February 1, 1955 the Board of Commissioners of the City of Wildwood adopted the following resolution:
"WHEREAS, pursuant to resolution No. 6337 adopted December 21, 1954, and in accordance with public notice by advertisement thereof, there was sold at public sale on January 3, 1955, lands designated as lots 1 to 10, inclusive, Block 78, Third Ward, Wildwood, N.J. to William H. Bright, Inc. Agent for $57,000.00.
THEREFORE BE IT RESOLVED by the Board of Commissioners of the City of Wildwood, in the County of Cape May, New *167 Jersey, the aforesaid sale be and the same is hereby confirmed. Provided, however, that the said Agent or its Assigns fully comply with the conditions of said sale as set forth in said Resolution No. 6337, adopted December 21, 1954."
Until November 15, 1955 there were numerous conferences between Ward Bright, the plaintiff, or the latter's attorney and various city officials concerning the title to the lands sold and compliance with the various terms of the sale. On that date the City of Wildwood adopted a resolution rescinding the resolution theretofore adopted confirming the sale.
There is absent here any allegation or proof of actual fraud or favoritism.
Plaintiff seeks the specific performance of the agreement to sell as an assignee of said William H. Bright, Inc., Agent.
Defendants argue that the resolution and the advertisement fail to establish a common norm or standard which would be applicable alike to all bidders. Defendants reason that this requirement is a jurisdictional sine qua non to the existence of the municipal power to sell under N.J.S.A. 40:60-26(a); that the failure of the municipality to so establish a common norm or standard renders the municipal action ultra vires and void ab initio, and it therefore follows that plaintiff cannot, under the law, establish a right to relief in this action. Defendants further contend that in any event, on the proofs, plaintiff has not complied with the terms of the contract. Plaintiff urges not only the legality of his contract but also that even in the event that it should be ultra vires, the City of Wildwood is estopped from asserting such a defense.
On the motion here made, the court must accept as true all evidence supporting the position of the plaintiff and must give to him the benefit of all inferences in his favor that may be logically and legitimately drawn therefrom. Bergquist v. Penterman, 46 N.J. Super. 74 (App. Div. 1957); Cauco v. Galante, 6 N.J. 128 (1951).
Taking as true all of the evidence supporting plaintiff's position, and according to him the benefit of all inferences *168 in his favor that may be logically and legitimately drawn therefrom, it cannot be said that he has shown no right to relief. Of the several reasons advanced by defendants for a dismissal, only one requires any more extensive consideration, i.e., the argument that the contract here sought to be enforced is ultra vires, there being an insufficient norm or standard set forth in the advertisement.
Strictly speaking, there is a distinction between an act utterly beyond the jurisdiction of the municipal corporation, and hence ultra vires in the primary sense, and an act which is an irregular exercise of a basic power under a legislative grant in a matter not in itself jurisdictional, and hence ultra vires in a secondary sense. Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493 (1955); Potter v. Borough of Metuchen, 108 N.J.L. 447 (Sup. Ct. 1931); Hoboken Local No. 2, etc., Ass'n v. City of Hoboken, 23 N.J. Misc. 334 (Sup. Ct. 1945); 10 McQuillin, Municipal Corporations, § 29.10, p. 194 et seq.
"A contract of a corporation, which is ultra vires, in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore, beyond the powers conferred upon it by the legislature, is not voidable only, but wholly void, and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it." Central Transp. Co. v. Pullman's Palace-Car Co., 139 U.S. 24, 59; 11 S.Ct. 478, 35 L.Ed. 55 (1890).
Where an act of the municipality is ultra vires in the primary sense, i.e., where the municipality has no power under any circumstances to perform an act, it is void and is not subject to ratification. Nor can the municipality be estopped from urging the ultra vires nature of the act as a defense thereto. Hoboken Local No. 2, etc., Ass'n v. City of Hoboken, supra; Spoerl v. Pennsauken Tp., 14 N.J. 186 (1954); McQuillin, op. cit., ibid.
*169 However, where an act is ultra vires in the secondary sense, i.e., where the municipality has the power to perform an act but the performance is irregular in some particular which is not jurisdictional, the municipality may, under certain circumstances, ratify the same or be estopped from urging its ultra vires nature as a defense. Summer Cottagers' Assn. of Cape May v. City of Cape May, supra; Car Spring and Rubber Co. v. City of Jersey City, 64 N.J.L. 544 (E. & A. 1900); Bourgeois v. Board of Chosen Freeholders of Atlantic County, 82 N.J.L. 82 (Sup. Ct. 1911); Potter v. Borough of Metuchen, supra; De Muro v. Martini, 1 N.J. 516 (1949).
It must be borne in mind that in every event the legislatively required exercise of a power in a given manner cannot be so relaxed as to defeat the public policy sought to be served. When this occurs there can be neither ratification nor estoppel. Juice Bar Corp. v. Township Committee of Tp. of Neptune, 36 N.J. Super. 164 (App. Div. 1955); Bauer v. City of Newark, 7 N.J. 426 (1951); Hoboken Local No. 2, etc., Ass'n v. City of Hoboken, supra.
There is no room for doubt that the sale here involved was within the municipality's essential jurisdiction. N.J.S.A. 40:60-26. The lands were taken by foreclosure of municipal tax liens by the governing body, and the municipality had determined that they were no longer required for municipal purposes.
Not only does the statute by its express terms provide that "the conditions of sale shall be set forth at length," but it is as well implicit in the grant of the power to sell at public vendue, subject to a condition providing for an affirmative future accomplishment by the purchaser, that such prospective condition shall be clearly and precisely expressed in the advertisement and be applicable and common to all bidders. The public policy of the State requires that there be a definite common norm or standard to which all competitive proposals must relate. Such a standard is the keystone to just and fair competition. Van Reipen v. City of Jersey City, 58 N.J.L. 262 (Sup. Ct. 1895); Pew v. *170 Commissioners of Fire Dist. No. 1 in Chester Tp., 96 N.J.L. 45 (Sup. Ct. 1921); Case v. Inhabitants of Trenton, 76 N.J.L. 696 (E. & A. 1909); Juice Bar Corp. v. Township Committee of Tp. of Neptune, supra.
The reason for such a rule is founded upon the philosophy that the municipality must, by its contractual action, secure economy, avoid extravagances, eliminate fraud or favoritism and obtain the best possible price. Juice Bar Corp. v. Township Committee of Tp. of Neptune, supra, and cases cited therein.
It is self-evident that no hard and fast rule can be adopted which will delineate with specificity the particular language required in all advertisements of a sale subject to a future condition. In each case the exact verbiage must be considered to ascertain whether it fairly apprises a prospective bidder of the terms of the condition, and so is consistent with public policy. The touchstone of the determination is whether the printed advertisement created a norm or standard applicable and common to all bidders, and whether it was sufficiently specific, definite and intelligible in its terms to place all prospective bidders on an equal footing.
Where conditions appended to a sale concern themselves with some future improvement to the real estate, each specific, definite and minute specification of such improvement frequently cannot be set forth with particularity. It must follow in the very nature of things that some liberality in the statement of the conditions must be allowed, but by the same token, the conditions as expressed must be of such a nature as to fairly apprise prospective bidders of that which may be required by all in the future, and to furnish to all prospective bidders a common norm or standard.
Where the contest of an advertisement antedates the sale, the court is necessarily restricted to a consideration of the context of the cold print. However, where, as here, a contest post-dates the sale and the confirmation thereof by the municipality, the advertisement must be considered in the light of the actual facts as they occurred. Inferences as to the efficacy of the advertisement may be drawn from *171 the conduct of all of the parties to ascertain whether there was, in actuality, a common norm or standard. In Armstrong v. Board of Com'rs of City of Trenton, 137 N.J.L. 332 (Sup. Ct. 1948), the court said:
"The test is the reasonableness of the specification and reasonableness is to be determined by the actual effect, not by the intended effect that existed in the minds of the framers."
According to the plaintiff all of the inferences that may be logically and legitimately drawn from the evidence, it cannot at this posture be said that the advertisement violated either the statutory mandate or the public policy of the State. Neither can it be said that the municipality should not be estopped from urging the invalidity of the advertisement and hence the sale.
Motion denied.