THE TOWN OF HACKETTSTOWN ads. SWACKHAMER.

1. Municipal corporations, in the absence of a specific grant of power, do not, in general, possess the capacity to borrow money.
2. A note given by such corporation, for an unauthorized loan, cannot be enforced, even though the money borrowed has been expended for municipal purposes.
3. Seemingly, a promissory note, given for legitimate purposes by a municipal corporation, will not have the effect, when in the hands of a *bona fide* holder, of cutting off the equities existing between such corporation and the payee.

On rule to show cause.

Argued at June Term, 1874, before BEASLEY, Chief Justice, and Justices BEDLE, WOODHULL and SCUDDER.

For the defendants, *Pitney.*

For the plaintiff, *Vanatta.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The note, which is the subject of this suit, was given by the treasurer of the town of Hackettstown, in the name and behalf of the town, for money borrowed. This case, therefore, raises the question whether a municipal corporation, in the absence of an express power for that purpose, can contract for loans for the supply of its ordinary expenses.

At the present time it seems to be generally conceded, that a private corporation, constituted with a view to pecuniary profit, has, by implication, when not in this particular specially restricted, the power in question. The law was so held in this state, in the case of *Lucas* v. *Pitney,* 3 *Dutcher* 221, and the same rule has been repeatedly recognized in other decisions. And this result is the appropriate product of the principle that corporate powers, which are the necessary accompaniments of powers conferred, will be implied. In these

instances the ability to borrow money is so essential that without it the business authorized could not be conducted with reasonable efficiency, and, as it cannot be supposed that it was the legislative intent to leave the company in so imperfect a condition, the inference is properly drawn that the power to raise money in this mode is inherent in the very constitution of such corporate bodies.   Such a deduction is simply, in effect, a conclusion that the lawmaker designed to authorize the use of the means fitted to accomplish the purpose in view.   It has been often said that the means which can be thus raised up by implication must be necessary to the successful prosecution of the enterprise, and that the circumstance that they are convenient will not legalize their introduction.   But the necessity here spoken of does not denote absolute indispensableness, but that the power in question is so essential that its non-existence would render the privileges granted practically inoperative, or incomplete.   It is, consequently, obvious that a presumption, resting on such a basis as this, must spring up in favor of almost the entire mass of commercial and manufacturing corporations, for without the franchise to effect loans, the chartered business could be but imperfectly transacted.   And yet, even in such instances, the usual inference that such an implied power exists may be repelled by the language of the particular charter or the peculiar circumstances of the case. . In a word, the rule of law in question is nothing but the discovery, by the courts, of the legislative intent, such intent having been ascertained by a construction of charters, as applied to the subject matters.

Taking this as the ground of our reasoning, I am at a loss to perceive how it can be inferred that a power to borrow money is an appendage to the usual franchises given to municipal corporations.   Such a right cannot, in any reasonable sense, be said to be necessary within the meaning of that term as already defined.   Under ordinary circumstances it is not certainly indispensable as common experience demonstrates.   In the great majority of instances the municipal

affairs are, with ease and completeness, transacted without
it. I do not wish to be understood as indicating that under
certain special conditions an opposite deduction may not be
legitimately drawn. It is plain that it is practicable to
impose a duty on a municipality requiring the immediate
use of large sums of money, and in such a situation the infer-
ence may become irresistible that it was intended that funds
were to be provided by loans. My remarks are to be
restricted to that class of cases where charters are granted
containing nothing more than the usual franchises incident to
municipal corporations, and under such conditions it seems
clear to me that the power to borrow money is not to be
deduced. I have already said that it does not appear to be
a necessary incident to the powers granted, for such powers
can be readily and efficiently executed in its absence. It
would be to fly in the face of all experience to claim that the
ordinary municipal operations cannot be efficiently carried
on except with the assistance of borrowed capital. Without
any help of this kind, it is well known that our towns and
cities have long been, and are now being, improved and gov-
erned. For the attainment of these ends it has not generally
been found necessary to resort to loans of money. The sup-
plies derived annually from taxation have been found amply
sufficient for these purposes. Consequently I am unable to
perceive any necessity to borrow money, under these condi-
tions, from which the gift of such power to borrow is to be
implied. It undoubtedly is clear that if, as has been asserted,
the ends of the municipal charter can be conveniently reached,
without a resort to the device of raising moneys by loan,
there is not the least legal basis for a claim of the power to
obtain funds in that way. Granted the fact that the charter
can be executed with reasonable ease and with completeness,
the conclusion is inevitable that the power in question cannot
be called into existence by intendment, and as I claim the
fact to exist I must, of necessity, reject the right of implica-
tion in question.

Vol. viii.                    N

Nor is there anything in the language or in the frame of the present charter which would seem to favor the idea of the existence of an authority in the corporation to borrow money. It is in the ordinary fashion, giving the usual prerogatives of administration, improvement and police, and then follows the important clause, declaring " that it shall be lawful for the common council, from year to year, to vote and raise by tax such sum or sums of money as they shall deem necessary and proper." Of course there can be no doubt with respect· to the purposes to which the money thus authorized to be levied is to be applied. It is the means whereby the duties· of local government are to be discharged. There is no limitation on the amount that may be raised. But there is a limitation on the method of raising it. It is not a general authority to raise money in any mode which the common council shall devise. The restriction is, it shall be raised " by tax." How can it be claimed, then, that it can be raised by loan? The power to borrow money is, in a certain sense, a larger power than that of raising money by taxation. There is, in the nature of the thing, an immediate check to excessive taxation; that is, the resistance of the parties taxed. There is none such in the power to borrow, for the immediate burthen of a loan is but slightly felt. Indeed, it is difficult to imagine any greater power that one person can confer upon another than an unlimited authority to borrow money. It is a common thing for an agent to have the right to contract debts in the name of his principal; but a very uncommon thing for such agent to be authorized to borrow money *ad libitum.* A more dangerous confidence could scarcely be given. If the municipal authorities under one of these charters, which in these days are so common, have this power to borrow, which is claimed for them, such power is practically unlimited. I see no limit to it, except the good sense, virtue and intelligence of the depositaries of it. It may be resorted to on all occasions in the management of the affairs. of the city. The use of such a power might, at the will of the officials, be co-extensive with the corporate operations.

All the usual enterprises and improvements could be under-taken on a basis of a credit, and annual taxation, instead of being made the basis and measure of annual expenditure, could readily be converted into a subordinate auxiliary to an extended system of loans. It is plain that such a power would be full of peril to the owners of city property, and the widest door would be thus thrown open to extravagance, recklessness and fraud. In my judgment, if such a system was judicially recognized, and such recognition was promul-gated, almost every city in the state would be soon over-whelmed with indebtedness. Nor do I for a moment believe that a municipality could obtain from any legislature an unrestricted power to borrow money. It is probable that such a boon has never been solicited by any public corpora-tion. Our statutory history evinces clearly that the power in question has been granted with a stinted hand and circum-scribed by well defined limitations. My judgment is entirely averse to raising up this dangerous power by implication. If the rules of law compelled the court to make such implica-tion, it seems to me such result would be largely injurious to the well-being of the state; and it is, therefore, a satisfaction to know such rules of law do not exist. The authority to tax affords a sufficient source of funds requisite for all muni-cipal purposes, and the consequence is there can be no infer-ence of the existence of the superfluous power to borrow money for the same end.

An examination of the books will show that this question has not as yet received much judicial consideration. The courts of Wisconsin and Ohio have had this matter before them, and have arrived at a result the opposite of that which has just been stated. I have carefully weighed the arguments of these learned tribunals, but they have failed to convince my understanding. The cases referred to are those of *Mills* v. *Gleason*, 11 *Wis.* 470; and *Bank* v. *Chillicothe*, 7 *Ohio*, *part II*, 31. As a counterpoise to these views stands the weighty opinion of Judge Dillon, in his treatise on *Munici-pal Corporations, Vol. I*, § 81. Much emphasis is added to

this expression of opinion, from the fact that this author had before him, at the time he wrote, the opposing cases just cited. In this state of the authority, it cannot be claimed that the principle is so settled that the judgment of this court cannot be freely exercised with respect to this important subject. My conclusion is that already expressed, that a right to borrow money is not to be inferred from any of the ordinary powers conferred in the charters of municipal corporations, and that, under ordinary circumstances, such a power can proceed only from an express grant to that effect.

Nor do I think that it adds anything to the right, to enforce the note in this case, that the money which it represents, and which was borrowed, has been expended in behalf of the corporation for legitimate purposes.   The argument on this head was that, as the money had gone for the benefit of the corporation, the law, upon general principles, would compel its re-payment.   If this is so, then the rejection of an implied power to borrow is of little avail.   The doctrine, although repudiated in the abstract, would be ratified in the concrete. If this contention is tenable, it is impossible to close the eye to the fact that the loan, although held illegal and void in its inception, would thus, by a subsequent act, be rendered valid and enforceable.  To style it, as was done in the argument, money had and received, would not change the real nature of the transaction.   To permit a recovery of it in this secondary form would be, virtually and in truth, to effectuate a loan, and all the evils attendant on the power to borrow money in an unrestricted form, would supervene.   And it is to be noted, that it is altogether a fallacy to argue that the law will raise an implied promise to repay the money after it has been used. The impediment to such a theory is, that the corporation has not the competency to make the promise thus sought to be implied.   An express promise, to the effect contended for, would be illegal, and, therefore, clearly, the law will not create one by implication.   It is not the case of a principal using money borrowed by his agent without authority, but it is the case of a principal who is incapacitated by law from

borrowing, and who, therefore, cannot legalize the act, either directly or by circuity.   Perhaps a parallel instance would be presented in case of a loan to a married woman at common law, the money being used by her.   Her promise to repay the loan would be void; and, from the fact of her having made use of the money, no implied promise in law could be deduced.

The lender of such money may, perhaps, have his redress against the officer of the corporation, who unjustifiably held himself out as possessed of the right to take the loan in the name and on the responsibility of the city, or by a recourse to equity, asking to be subrogated to the rights of those creditors who have received his money, instead of having their debts paid by the corporation.   But even if the holder of this note should be remediless, the result is the same.   No one can justly reproach the law for not providing him a remedy for his own folly or indiscretion.   Such folly or indiscretion may have enabled the city officials to create a burthen, or may have stimulated them to acts of extravagance which would not have been otherwise created or done.   It is but just that the individual who has occasioned the evil should bear the loss.   But whether the owner of this paper be remediless or not, it is enough for the present purpose to say that there is no apparent ground on which this money, thus illegally loaned, can be recovered by an action at law.

The establishment of these general principles necessarily leads to a decision against the plaintiff in this case.   But there are narrower grounds which would conduct to the same result.

On the admission that the common council, which is the ruling power of the corporation, had authority to contract the debt in question, it was not shown at the trial, with anything like legal certainty, that this loan was either authorized or ratified by such body.   The treasurer obtained the money and gave the note.   The proof of his authorization consisted in his statement that he had a " verbal authority to borrow money needed for the purposes of the town."   This is entirely too loose.   Such a power could not be transferred, except by

a formal resolution, passed at a legal meeting of the council, or by an ordinance duly enacted. Nor was it shown that the fact of the money's having been expended for town purposes, was ever known to the council. The result is that, at the trial, there was proof neither of the authorization of the treasurer, or of ratification of his act. One of the essentials of the plaintiff's case was wanting to it. On this ground alone, there must be a new trial.

The further question was discussed at the bar, whether a municipal corporation, lacking a special authority to that end, can execute a promissory note. I have examined the subject, but the views already expressed render it unnecessary to pronounce any final conclusion with respect to it, for the purposes of the present case. I may say, however, that my present view is, that a corporate body of this character, has the general and inherent right to execute a note as a voucher of indebtedness, but that such note will not have the effect when in the hands of a *bona fide* holder before maturity, of cutting off the equities existing between the maker and payee. In this respect I fully concur in the learned opinion of Mr. Justice Bradley, recently read in the Supreme Court of the United States, in the case of *The Mayor* v. *Ray*, 19 *Wall.* 468.

Let a *venire de novo* be awarded.