THE TOWN OF WORLAND, Wyoming, a municipal corporation,

*Plaintiff and Respondent*

vs.

ODELL AND JOHNSON, Contractors, a partnership and Veterans Homes Company, a corporation,

*Defendants and Appellants.*

(No. 2805; September 16th, 1958; 329 Pac. (2d) 797)

2

For the defendants and appellants the cause was submitted upon the brief and also oral argument of Robert R. Rose, Jr., of Casper, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief of Floyd D. Gorrell and Frank B. O'Mahoney, both of Worland, Wyoming and oral argument by Mr. O'Mahoney.

Heard before Blume, C. J. and Harnsberger and Parker, JJ.

6

## OPINION

Mr. Chief Justice Blume delivered the opinion of the court.

This is an action brought by the Town of Worland, a municipal corporation organized as a town, against Odell and Johnson and Veterans Homes Company for declaratory judgment as to the liability of the town under the circumstances hereinafter mentioned. Odell and Johnson, on behalf of the Veterans Homes Company, filed cross petitions demanding either judgment against the town for $25,808.57 on account of the refusal of the town to carry out the contract hereinafter mentioned or that the appellants recover that amount from the town under equitable principles, that is to say under an implied contract or for money had and received. The case was tried below on a stipulation of facts, the essentials of which are substantially as follows: The Town of Worland is a municipal corporation organized as a town by virtue of the laws of the State

of Wyoming. The Veterans Homes Company apparently is the owner of the so-called Evans Addition to the Town of Worland, which addition has been such at all times. On August 27, 1948, the mayor and town council of the town established a Board of Public Utilities in accordance with Ch. 105, S. L. of Wyoming, 1947. Negotiations were had between the Veterans Homes Company and the members of the Board of Public Utilities in reference to the development of the Evans Addition. On January 20, 1950, the Board of Public Utilities adopted the following resolution:

"Howard McClellan moved that all owners of the subdivision in the Town of Worland, stand the cost of installation and materials of sewers and water system in and to the subdivision, the sum to be repaid to said owners from the revenue less the expenses of operation and maintenance, from the individual areas, or available surplus; said installation to be made by the Town of Worland, George Donnell seconded the motion. Motion carried."

Three of the council of five of the Town of Worland were present at the meeting of the board and objected to any agreement between the Board of Public Utilities such as contained in the resolution above mentioned. On March 27, 1950, three members of the council were present at one of its meetings, and the minutes of that meeting state as follows:

"Representatives from Decker Addition, Evans Addition, and the Pulliam Development were present and discussed with the Council, the matter of accounting for the funds involved in the developing of the above additions. The Council referred the problem to the Board of Public Utilities."

The minutes of that meeting are somewhat obscure and in the affidavit of one of the three councilmen above mentioned it is stated as follows:

"4. That on March 27, 1950, he [the affiant] attended a meeting of the Town Council at which were in at-

tendance representatives of Decker, Evans and Cloud Peak Additions to the Town of Worland; that said representatives were present at said council meeting for the purpose of discussing the matter of accounting for the funds involved in the development of said additions for the installation of sewer and water therein; that councilmen Lowe and McClellan with affiant were the only council members present, and councilman Lowe was acting mayor; that said council refused to take any action in the matter and refused to take the responsibility for said project, referring said representatives to the Board of Public Utilities;

"5. That affiant has at all times opposed said project. * * * "

The Board of Public Utilities through its own agents constructed water and sewer lines and made connections with houses in the Evans Addition, and the Veterans Homes Company paid for such installation from time to time up to and including February 11, 1953. The cost of the construction was no more than the reasonable value both for the material as well as the labor in connection with such water and sewer extensions, and the amount of $25,808.57 is the reasonable value for such installation. Pursuant to the agreement, the Veterans Homes Company intended to, and did in fact, build 130 homes in the Evans Addition to the town. No fund was ever created to repay the Veterans Homes Company for the payments which it made to the town. All householders in the addition are charged as to water and sewer the going rate for such services as said rate is prevalent throughout the Town of Worland for similar services. The town receives the amounts for such services and enjoys an increased tax receipt resulting from the increased valuation of the properties upon which the homes in the Evans Addition in question have been built. The charges so made to the users of the facilities in the Evans Addition do not include any amount by reason of the extension of the sewer and water mains. (But

see below). Further, at the time of the sale of the residences within the area of the Evans Addition in question, none of the householders were advised that any additional charge of any kind whatsoever would be made upon them to defray the cost of the sewer and water extensions in that area. After a certain number of homes were constructed, the Board of Public Utilities notified the Veterans Homes Company that the board would no longer be responsible for water and sewer installation costs and expenses. The date is not given but it was apparently soon after the last payment made by the Veterans Homes Company. It seems that the actual connection of the water and sewer lines in the Evans Addition with the water and sewer mains in the town was made by the Veterans Homes Company. After the latter company was advised that the Board of Public Utilities would no longer extend any sewer or water lines, the company raised the sale price of its homes thereafter built to pay for water and sewer facilities. As late as March 23, 1955, Francis Hillard, Office Manager of the Board of Public Utilities, wrote to Odell and Johnson that the Board of Public Utilities was indebted to them in the amount of $20,582.06 and he stated further, "The Board is ancious (sic) to liquidate this debt as soon as is possible, and any further development along this basis has been discouraged so as to expedite means of repayment of all debts already incurred." At least until February 16, 1954, the Board of Public Utilities recognized that the Town of Worland had received substantial benefits through increased assessment values from the Evans and other additions and that they would provide approximately $12,000 annually in taxes to the Town of Worland and that repayments of the advances made by the Veterans Homes Company and others should be repaid.

The case at bar involves only the Evans Addition.

As a matter of fact, a similar arrangement was made with the owners of two other additions, and the total loans made amounted to about fifty-two thousand dollars which is hardly a small amount when considering the population of the Town of Worland which, according to the census of 1950, was 4,202.

The trial court found generally in favor of the plaintiff and against the defendants, holding the alleged agreement in contravention of law and that the plaintiff is under no obligation to pay the amount demanded by the defendants. From that judgment the defendants have appealed to this court and will hereafter be mentioned as the appellants.

1. Appellants filed a motion for summary judgment because appellee failed to give a table of cases in its brief as provided by Rule 12 (c) (4), Rules of the Supreme Court of Wyoming, December 1, 1957. The rule did not go into effect until after the appeal in this case was taken. Appellee filed a motion to dismiss the appeal because the notice of appeal was served on the same day on which the judgment of the trial court was entered. We see no reason why that may not be done. Both motions are overruled.

2. Validity of the Contract.

The substance of the contract herein is that the board borrowed money from the appellants for the purpose of constructing an extension of waterworks and sewer works, the money borrowed to be repaid out of the rentals received from the extensions made. We find no statutory authority for the Board of Public Utilities to borrow any money, nor do we find statutory authority for paying any loan in the manner provided in the contract. See Lakota Oil & Gas Co. v. City of Casper, 57 Wyo. 329, 116 P. 2d 861, 867, and authorities therein cited. See also Annotation, 71 A. L. R.

828. The town, not the Board of Public Utilities, had power to pledge the revenues from the waterworks and sewer works in connection with the issuance of revenue bonds, but these bonds could be issued only pursuant to a vote of the people. Laverents v. City of Cheyenne, 67 Wyo. 187, 217 P.2d 877. Moreover, Article 3, § 37, of our Constitution provides:

"The legislature shall not delegate to any special commissioner, private corporation or association, any power to make, supervise or interfere with any municipal improvements, moneys, property or effects, whether held in trust or otherwise, to levy taxes, or to perform any municipal functions whatever."

We construed this provision in Stewart v. City of Cheyenne, 60 Wyo. 497, 154 P.2d 355. We held in that case that under this constitutional provision a board of public utilities is under the general control of the town or city council and it has no other powers except those which are administrative. The authorization of an extension of water mains or a sewer system is not an administrative power but is a power which is legislative. 63 C.J.S. Municipal Corporations § 1036, p. 631; 1 Elliott, Roads and Streets, 4th Ed., § 619. In the Stewart case we cited the case of Borough of Weatherly v. Warner, 148 Pa.Super. 557, 25 A.2d 831, in which it was held that an ordinance delegating to a street committee the power to determine what curbing should be constructed was invalid. In the case at bar, the authorization of construction of water mains and sewers is of the same kind and character. Section 1 of Ch. 105, S.L. of Wyoming, 1947, which amended the previous act concerning public utilities provides: "Said Board of Public Utilities may also improve, extend or enlarge such plants as hereinafter provided." No such provision however is made. In any event, the power there given can at most extend to the actual construction of the plants rather than the authorization there-

of. It is clear that the Board of Public Utilities of the Town of Worland undertook to exercise a power which it did not possess, and the contract entered into by it as heretofore mentioned is void or at least voidable.

3. Remedy in Equity.

The main contention of appellants is that the Town of Worland should in equity pay for the benefit which the town received by reason of the extension of the waterworks and sewer system, and they claim as a benefit the whole amount which they loaned the Board of Public Utilities. Counsel seems to think that the town is the only party which received any benefit, which of course is not true. A large part, if not the largest part, of benefit received from the extension of the facilities in question was received by the owners of the Evans Addition. In view of the demand for modern conveniences, it is probable that appellants would not have been able to sell any lots in the Evans Addition if the waterworks and sewer system had not been extended. See City of Danville v. Forest Hills Development Corporation, 165 Va. 425, 182 S.E. 548, and the opinion of Mr. Justice Halley in the case of Selected Investments Corporation v. City of Lawton, Okl., 304 P.2d 967, 976. To hold that where there is a mutual benefit the town is nevertheless required to pay the cost of all of it seems to be a proposition of doubtful equity. Moreover, the agreed statement of facts discloses that, when the Board of Public Utilities refused to continue the arrangement any longer, the owners of the Evans Addition thereafter made an extra charge against the purchasers of houses in the Evans Addition, and thus perhaps recovered at least a portion of the money loaned to the city. If they did, they should not be entitled to be paid twice to that extent. Trentman v. City and County of Denver, Colorado, D.C. Colo., 129 F.Supp 624, affirmed 10 Cir. 236

F.2d 951, certiorari denied 352 U.S. 943, 77 S.Ct. 265, 1 L.Ed.2d 239, and cases cited. The record is not clear on this matter. And we might mention the fact that if the loan herein in question were to be repaid within a reasonable time, the householders in the Evans Addition would in all probability be required to pay a much larger service charge than is charged to them at the present time. Under existing conditions the service charge to them is the same as in the Town of Worland generally. If, then, the rates were raised there would arise a discrimination between the users of the public utility. It is said in the case of City of Roanoke v. Fisher, 193 Va. 651, 70 S.E.2d 274, 279:

"* * * To permit the city of Roanoke to impose a service charge for the use of the sewers on the owners of land in the former sanitary district when no similar charge is imposed on the owners of land in the other parts of the city would be decidedly inequitable. A municipality has no more right to practice discrimination as to its services or the rates imposed therefor, than does a privately owned public utility. * * * "

That no discrimination should be made is stated in 43 Am.Jur. Public Utilities and Services § 171, pp. 683-684, and 73 C.J.S. Public Utilities § 27, pp. 1048-1050. The Town of Worland has not been granted the right by the legislature to exercise any discrimination, and it would seem that in the absence of legislative authority such discrimination would be against public policy. It is quite apparent that the parties entered into the arrangement without giving this matter proper attention.

The subject as to whether or not the municipality or other political subdivision of the state is liable for benefits received is generally dealt with under the title of "implied contract". Annotations are contained in 84 A.L.R. 936, 110 A.L.R. 153, 154 A.L.R. 356, 27 L.R.A.,N.S. 1117 et seq. See 38 Am.Jur. Municipal

Corporations § 515 et seq.; 63 C.J.S. Municipal Corporations § 975, p. 524; 87 C.J.S. Towns § 105, p. 107. We dealt with that subject to some extent in George W. Condon Co. v. Board of County Com'rs of Natrona County, 56 Wyo. 38, 103 P.2d 401. That case, however, has little bearing herein. It involved a road and we held that the county, not having accepted it, received no benefit and therefore was not liable for benefits received. It is stated in an article in 47 Harv.L.Rev. 1143 that the liability of municipal corporations in quasi-contracts, that is upon contracts implied in law, has never been satisfactorily worked out by our courts. In 89 U.Pa.L.Rev. 500 the author of an article on quasi-contractual liability of municipal corporations states: "The cases, with few exceptions, have not been decided on fixed principles and established law; the courts rather have taken into consideration the facts and circumstances of each individual case and have been governed largely by public policy influences". See also the article in 10 N.Y.U.L.Rev. 64. It is not surprising, accordingly, that we find a conflict in the authorities and, in fact, confusion. In Watts Detective Agency, Inc., v. Inhabitants of Sagadahoc County, 137 Me. 233, 18 A.2d 308, 312, the Supreme Judicial Court of Maine stated: "The principles of law as to implied contract arising from the rendition of services or quantum meruit are without application in dealing with municipalities or political divisions of the state." And in Louisville Extension Water Dist. v. Sloss, 314 Ky. 500, 236 S.W.2d 265, 266, it is stated: "It is the rule in this jurisdiction that no municipal corporation may be bound on the theory of implied contract." In Village of Eastlake v. Davis, 94 Ohio App. 71, 114 N.E.2d 627, 629, it is stated:

"There can be no recovery against a municipality of this state for a claim on a *quantum meruit* basis. * * * A village cannot be made liable as can private parties

in relations quasi *ex contractu.* No liability attaches to a village where the plaintiff seeks to hold the corporation liable in *quantum meruit* or on an implied contract. * * *"

With the courts of these states holding that a municipality is not liable on an implied contract, it is readily seen that this court must proceed with caution in holding the contrary under the facts before us. In the greater number of states, however, it is held that, where a municipality or other political subdivision has general power to make a contract, a mere irregularity in the execution thereof will not prevent the recovery of benefits received. Annotation, 84 A.L.R. 936-949; 38 Am.Jur. Municipal Corporations § 516, p. 194. If the term "irregularity" were applied reasonably, still leaving substantial compliance with mandatory statutory provisions, no great objection could probably be raised to the rule, especially in cases where labor performed or goods or money furnished is for necessaries for the exclusive benefit of the community at large. See City of New York v. Davis, 2 Cir., 7 F.2d 566, 574, and 16 Va.L.Rev. 633-635.

By the great weight of authority, the rule is not applied when it comes in conflict with two well-recognized rules. The first of these rules is the following: If the political subdivision cannot make an express contract in connection with a matter in dispute, there cannot be an implied one. State ex rel. Board of Com'rs of Harmon County v. Oklahoma Tax Commission, 194 Okl. 359, 151 P.2d 797; Los Angeles Warehouse Company v. County of Los Angeles, 139 Cal. App. 368, 33 P.2d 1058; Bride v. City of Slater, Mo., 263 S.W.2d 22; Tate v. Johnson, 32 Idaho 251, 181 P. 523; Hoboken Local No. 2, New Jersey State Patrolmen's Benev. Ass'n v. City of Hoboken, 23 N.J.Misc. 334, 44 A.2d 329, affirmed 134 N.J.L. 616, 48 A.2d 917; 14 Am.Jur. Counties § 44; 38 Am.Jur. Municipal

Corporations § 517, p. 196; 87 C.J.S. Towns §105, p. 107. It is not sufficient to show merely that benefits have been received. Statutory authority must appear. 44 C.J. 139; 87 C.J.S. Towns § 105, p. 107; Seif v. City of Long Beach, 286 N.Y. 382, 36 N.E.2d 630, Id., 287 N.Y. 836, 41 N.E.2d 164. In City of Tulsa v. Malloy, 104 Okl. 281, 231 P. 256, 257, the court said: "There could be no binding contract upon the city until it is first shown that there was authorization by charter or by law for the officers of said city to make such contract, and it is not sufficient that the performance of the contract for which payment is claimed is beneficial."

The second rule is that where the statute provides the specific manner or method by which a power must be executed, then that governs and no implied contract can arise. Thus it was said in Johnson County Sav. Bank v. City of Creston, 212 Iowa 929, 231 N.W. 705, 707, 237 N.W. 507, 84 A.L.R. 926: "Municipal corporations are the creatures of the Legislature. They have such powers to contract, and only such powers as the Legislature grants to them. When the Legislature withholds power to contract, or permits the exercise of the power in a given case only in accordance with imposed restrictions, the corporation may no more bind itself by implied contract than by the forbidden express contract." And the rule is well stated in the case of Hoboken Local No. 2, New Jersey State Patrolmen's Benev. Ass'n v. City of Hoboken, 44 A.2d 329, 332, 333, 23 N.J.Misc. 334, affirmed 134 N.J.L. 616, 48 A.2d 917, refusing to permit recovery in quantum meruit:

"It is well settled that a municipal corporation can act only through its authorized agents, and that where the powers of the corporation or its agents are subjected by law to restrictions with respect to the subject matters of contract, or to restrictions as to the form and method of contracting that are limitations upon the

power itself, the corporation cannot be held bound by either an express or implied contract in defiance of such restrictions. In such cases only a limited power is granted, and consequently an act done beyond the scope of such power is ultra vires and void. * * *"

And again the court says:

"* * * It is generally held that when a contract has been entered into by a municipal corporation with respect to a subject matter which was not within its corporate powers, or which it is authorized to make only under prescribed conditions, within prescribed limitations, or in a prescribed mode or manner, the corporation cannot be held liable on the contract regardless of whether the other party thereto has fully carried out his part of the agreement. The corporate powers of such a corporation cannot be extended by the doctrine of estoppel. * * *"

In Salt Creek Township v. King Iron Bridge and Manuf'g Co., 51 Kan. 520, 33 P. 303, 305, the court in refusing to allow for the benefit received for a bridge stated in part:

"It is a well-settled rule that township or other municipal officers cannot do by indirection that which they might not do directly. State (ex rel Reed) v. (Marion County) Commissioners, 21 Kan. 419. If township officers may disregard all of the statutory provisions concerning the construction of and payment for bridges, and create a liability against the people of a township by accepting bridges or other work without any power so to do, and thereby make the township liable, then the provisions of the statute defining how bridges should be built and paid for have no force whatever. Under such a rule, the township officers may at any time build and accept bridges, and create liabilities against the people of the township, without a vote, and without limit. * * * A township or other municipality can only act by the mode prescribed by law. Any other rule leaves the taxpayers at the mercy of the officers of the township and contractor, and would render all statutory provisions of limitation of power nugatory. * * *"

Numerous other authorities might be cited. See Annotation, 84 A.L.R. 936-958, and subsequent annotations; 38 Am.Jur. Municipal Corporations § 519. Late cases are Sorensen v. City of New York, D.C.N.Y., 99 F.Supp 411, affirmed 2 Cir., 202 F.2d 857, certiorari denied 347 U.S. 951, 74 S.Ct. 674, 98 L.Ed. 1097; Wacker-Wabash Corp. v. City of Chicago, 350 Ill.App. 343, 112 N.E.2d 903; Adalian Bros., Inc., v. City of Boston, 323 Mass. 629, 84 N.E.2d 35; Bride v. City of Slater, Mo., 263 S.W.2d 22.

The second of these rules seems to be more or less an aid of the first. If the fact that no express contract may be made is not altogether clear, its validity may be tested, if the statute permits, by resorting to the second rule. See the definition of ultra vires in Horrabin Paving Co. v. City of Creston, 221 Iowa 1237, 262 N.W. 480, and Samuel v. City of Wildwood, 47 N.J. Super. 162, 135 A.2d 583. If the exercise of a power is expressly forbidden, then the application of the first of these rules is of course perfectly clear. We might mention the fact that a few cases make a distinction between a power which is forbidden and a power which is merely unauthorized when applying the rule of implied contracts. See 64 C.J.S. Municipal Corporations § 1834, p. 329, note 62. However, all the courts, without a single exception so far as we know, agree that a municipality has only such powers as are granted to it by the legislature. That itself seems to mean that a power not granted is a power prohibited. As stated in Van Eaton v. Town of Sidney, 211 Iowa 986, 231 N.W. 475, 477, 71 A.L.R. 820, citing numerous cases: "Where a statute confers certain specific powers, those not enumerated are withheld. In other words, enumeration of powers operates to exclude such as are not enumerated." Hence, the prohibition of a power seems at best merely to be a clarification of the first of the rules above mentioned.

Assuming, without deciding, that the contract herein may be regarded as the contract of the Town of Worland made by its agent, the main question herein is as to whether or not the town had the power to borrow money for the purpose in question and is liable for the repayment thereof. See 9 Mich.L.Rev. 671. It is stated in 64 C.J.S. Municipal Corporations § 1834, p. 328, "When money is borrowed by a municipal corporation without authority of law, but is used and applied for a legitimate purpose, the corporation is liable on principles of equity and justice, as on an implied assumpsit, for money had and received." See also 44 C.J. 1146 and First Wisconsin Nat. Bank of Milwaukee v. Town of Catawba, 183 Wis. 220, 197 N.W. 1013, cited by appellants. In most of the cases, the money was borrowed for an essential and necessary expenditure of the municipality or other political subdivision. In all of them, it seems, it was for the exclusive benefit of the community at large, and in most, or at least many of them, there was merely an irregularity in the exercise of a power conferred. In the case at bar, the construction of the waterworks and sewer was not essential but merely convenient. Moreover, the benefit was not an exclusive benefit for the community at large but, as heretofore shown, an important part of the benefit accrued to the Evans Addition. In Palmcroft Development Co. v. City of Phoenix, 46 Ariz. 200, 49 P.2d 626, 103 A.L.R. 802, 803, modified 46 Ariz. 400, 51 P.2d 921, 103 A.L.R. 811, appears an agreement between the city and owners of some subdivisions similar to that in the case at bar except that in that case the city agreed to repay the loan in installments. The owners of the subdivisions sued and recovered the sum of seventy thousand dollars from the City of Phoenix. The case was decided mainly on the ground that the legislature subsequently required the repayment of a loan such as was made in that case. The court also mentioned the

principle of implied contract stated in 44 C.J. 1146; 64 C.J.S. Municipal Corporations § 1834. However, it appears from the case that the city had general and specific power to borrow money for any municipal purpose. That general power to borrow money is absent in the case at bar, so that we cannot follow the Arizona case if for no other reason than that. Counsel for the appellants cites the case of Valley Falls Co. v. Taft, 27 R.I. 136, 61 A. 41. In that case the plaintiff advanced certain money to the town for the construction of a road but the road was not in fact constructed, and the court held that if the town had no power to borrow the money then the money was paid without consideration. In the case at bar the sewers and water lines were in fact constructed, and it can hardly be said that there was no consideration moving to the appellants when the Evans Addition was specially benefited. In the case of Frisbie Co. v. City of East Cleveland, 98 Ohio St. 266, 120 N.E. 309, an agreement similar to that in the case at bar was made, and the city borrowed some nineteen thousand dollars which plaintiff sought to recover on account of benefits received. Recovery was denied mainly on the ground that the contract for the construction of the water line was not let as prescribed by statute. It will be noted that no contract was let when the water lines and sewer lines were constructed in the case at bar. So that the case just cited seems to be directly applicable in the case at bar. Similar is McBrian v. City of Grand Rapids, 56 Mich. 95, 22 N.W. 206.

It is stated in 15 McQuillin, Municipal Corporations, 3d Ed., p. 15, "In the absence of express grant of power it is generally held that a municipality has no inherent power to borrow money, nor is such power to be implied from the conferring of power to incur indebtedness." See also 1 Dillon, Municipal Corporations, 5th Ed. § 289, pp. 539-540; 64 C.J.S. Municipal Corpo-

rations § 1869, p. 422; and 87 C.J.S. Towns § 116, p. 120. In 64 C.J.S. Municipal Corporations § 1834, p. 328, it is stated that "Unauthorized debts and expenditures do not as a general rule create municipal liability". And in 87 C.J.S. Towns § 113, p. 115, appears the following statement: "A township cannot incur indebtedness or obligations unless there is antecedent constitutional or statutory authority, direct, or implied from the necessity of performing a duty involving the spending of money." So one would naturally expect, contrary to the broad statement in 64 C.J.S. Municipal Corporations § 1834, heretofore quoted, that ordinarily an unauthorized loan cannot be recovered even on the theory of benefits received. That was so held in the case of Strodtman v. County of Menard, 56 Ill.App. 120, 125, affirmed 158 Ill. 155, 41 N.E. 778, where it is stated:

"Power to borrow money is not an incident to local political government, and upon principle a county can not exercise it in the absence of express authority of law so to do. Hewitt v. [Board of Education of Normal] School Dist., 94 Ill. 528; School Directors [of District No. 3] v. Fogarty, [Fogelman] 76 Ill. 189; Law v. The People, [ex rel. Huck] 87 Ill. 385; Newgass v. [City of] New Orleans, (42 La.Ann. 163, 7 So. 565) 21 Amer. St. Rep. 368.

"The statutory provision that such power may be exercised if authorized by the electors of the county is, as we think, to be regarded as excluding the right to exercise the power except when authorized by a vote of the people. County of Hardin v. McFarlan, supra [82 Ill. 138]."

And recovery on the theory of benefits received for unauthorized borrowed money was denied in Randolph v. Town of Bernadotte, 243 Ill.App. 581; Michael v. Jordan, 288 Ill.App. 432, 6 N.E.2d 213; McCurdy v. County of Shiawassee, 154 Mich. 550, 118 N.W. 625; Wells v. Town of Salina, 119 N.Y. 280, 23 N.E. 870, 7 L.R.A. 759; Swackhamer v. Town of Hackettstown,

37 N.J.L. 191. See also Annotation, 7 A.L.R. 353, 361. In the Randolph case, supra, the rule is stated broadly that where the statute prescribes the conditions upon which money may be borrowed by a municipality, no liability can be created against the municipality unless such conditions are complied with. In the New York case, supra, at 23 N.E. 872, the court stated: "If a town could be made liable for money borrowed simply because it had been applied for town purposes, then the entire system for the audit and allowance of town charges would be overturned." In the Michigan case above, at 118 N.W. 629, the court stated:

"* * * Nor will equitable reasons control against any well-settled rule of law, or against public policy. A county has no power to borrow money in the manner and for the purposes proposed in the case at bar, unless the same is granted by statute. No power having been granted by statute, none will be implied. 11 Cyc. 502, and cases cited. All persons dealing with counties are bound to ascertain the limits of their authority fixed by statute or organic law, and are chargeable with knowledge of such limits. 11 Cyc. 468, and cases cited. This court has held that the doctrine of implied liability as upon implied contracts has no application to cases where the liability can only be created in a certain way. McBrian v. Grand Rapids, 56 Mich. 95, 22 N.W. 206, and cases cited and digested. * * *"

In the case of Swackhamer v. Town of Hacketts-town, 37 N.J.L. 191, 196, 197, the Chief Justice of the Court of Errors and Appeals, after pointing out the danger of granting indiscriminate power to borrow money to a municipality or other political subdivision, then passed on to the subject as to whether or not there should be a recovery for the money borrowed on account of the benefits received by the corporation. The statement of the court is so thoroughly logical that we think we should copy that portion of the opinion in full:

"Nor do I think that it adds anything to the right, to enforce the note in this case, that the money which it represents, and which was borrowed, has been expended in behalf of the corporation for legitimate purposes. The argument on this head was that, as the money had gone for the benefit of the corporation, the law, upon general principles, would compel its re-payment. If this is so, then the rejection of an implied power to borrow is of little avail. The doctrine, although repudiated in the abstract, would be ratified in the concrete. If this contention is tenable, it is impossible to close the eye to the fact that the loan, although held illegal and void in its inception, would thus, by a subsequent act, be rendered valid and enforceable. To style it, as was done in the argument, money had and received, would not change the real nature of the transaction. To permit a recovery of it in this secondary form would be, virtually and in truth, to effectuate a loan, and all the evils attendant on the power to borrow money in an unrestricted form, would supervene. And it is to be noted, that it is altogether a fallacy to argue that the law will raise an implied promise to repay the money after it has been used. The impediment to such a theory is, that the corporation has not the competency to make the promise thus sought to be implied. An express promise, to the effect contended for, would be illegal, and, therefore, clearly the law will not create one by implication. It is not the case of a principal using money borrowed by his agent without authority, but it is the case of a principal who is incapacitated by law from borrowing, and who, therefore, cannot legalize the act, either directly or by circuity. Perhaps a parallel instance would be presented in case of a loan to a married woman at common law, the money being used by her. Her promise to repay the loan would be void; and, from the fact of her having made use of the money, no implied promise in law could be deduced."

In the case at bar, the Town of Worland has not been given, so far as we can find, any general power to borrow money. If it does not have the funds on hand to construct water lines and sewer lines, it is given three, and only three, different powers in which to raise the

funds to construct these lines. One is to borrow money and issue general obligation bonds of the municipality, provided that the matter is approved by a vote of the electors. See § 29-2304, W.C.S. 1945. Second, it has the power at the present time to borrow money and issue revenue bonds, provided again that the issuance of these bonds is approved by the electors. See Laverents v. City of Cheyenne, 67 Wyo. 187, 217 P.2d 877. Third, it may create an improvement district and assess the cost of the local improvement against the lots benefited. See § 29-2006, W.C.S. 1945. In the resolution to create that district it may be provided under the statute that if any part of the improvement is to be paid out of the general fund or road fund of the city then the resolution must so state. None of these methods was followed in the case at bar.

As we have stated, by the great weight of authority the rule of implied contract does not apply when the method and manner of exercising a power or making a contract by a political subdivision of the state is prescribed by statute and the means and manner so prescribed is not followed. We see no reason why an exception should be made when a loan is in question, and that no such exception should be made is held as we have seen by some of the cases above cited. See particularly McCurdy v. County of Shiawassee, supra, and case cited. We cannot see why the manner and method of making a loan as above mentioned is not just as mandatory as the method mentioned in Tobin v. Town Council of Town of City of Sundance, 45 Wyo. 219, 17 P.2d 666, 84 A.L.R. 902. This ruling and this alone accords with the able opinion by Mr. Justice Kimball in Whipps v. Town of Greybull, 56 Wyo. 355, 109 P.2d 805, 146 A.L.R. 596, which, while not directly dealing with an implied contract, discusses at some length that the method and manner prescribed by

statute in carrying out the power granted to municipalities is mandatory and exclusive and that no contract made otherwise is valid.

We must hold that no recovery may be had of the loan made in the case at bar. We need not determine as to whether or not under some state of facts entirely different from that appearing herein equity demands the repayment of a loan to a municipality.

4. There is an additional reason why we cannot allow recovery herein in connection with the waterworks in this case. We have a special statutory provision governing that matter which counsel apparently have entirely overlooked. Section 29-2901, W.C.S. 1945, provides as follows:

"Any city or town owning its municipal water system or plant may enter into agreements with the owners of lands who desire to have the water system extended to their property within the corporate limits of such city or town, whereby the said land owners shall agree to pay to the city or town a stipulated amount, in such installments as may be agreed, for a period not to exceed ten [10] years, irrespective of the use or non-use of water during said period, and making such charges a lien upon their respective lands, and when such agreement has been filed with the city or town clerk the said charges shall become a lien upon the said lands. Each city and town shall have the power by ordinance to prescribe the rules and regulations governing such agreements, and providing for the enforcement of such lien."

Here we have a statute which may almost be said to have been enacted so as to meet the exact situation in the case at bar. It is said in 13 McQuillin, Municipal Corporations, 3d Ed., p. 204, n. 26, that if the statute prescribes the manner of payment of a special improvement, the method so prescribed must necessarily be followed. The method to be followed is a matter for

the legislature. Department of Public Sanitation of City of Hammond v. Solan, 229 Ind. 228, 97 N.E.2d 495. The creation of a specific mode of exercising power excludes all others. Mayor v. Ray, 19 Wall. 468, 86 U.S. 468, 22 L.Ed. 164. And where a special provision is made by statute, it prevails over the general. State ex rel. Daly v. Dryburgh, 62 Mont. 36, 203 P. 508, 511. The parties in this case failed to follow the mandatory provisions of the statute above quoted, and where a municipal contract is void as in the case at bar because opposed to a mandatory statute, no contract or benefit received can be implied. Johnson County Sav. Bank v. City of Creston, 212 Iowa 929, 231 N.W. 705, 237 N.W. 507, 84 A.L.R. 926, 935. When the legislature provides that the owners of property *must* pay for the extension of waterworks, we cannot, in defiance of such provision, hold the contrary. This court is not a super-legislative authority.

It follows from what we have said that the judgment of the trial court must be and is affirmed.

Affirmed.