**Matthew JOHNSTON and Lorraine Johnston, Dan Scott and Jeanne Scott, Richard M. Davis, Jr. and Susan E. Davis, Dan J. Daniels and Jan Daniels, James E. McLaughlin and Bette McLaughlin, and Jerry Meyer, Appellants (Plaintiffs),**

v.

**The BOARD OF TRUSTEES, SCHOOL DISTRICT # 1 WEST, SHERIDAN COUNTY, WYOMING; Lynn Simons, Superintendent of Public Instruction for the State of Wyoming; the State Board of Education for the State of Wyoming, Appellees (Defendants).**

**No. 5817.**

Supreme Court of Wyoming.

April 15, 1983.

William G. Myers, III of Burgess & Davis, Sheridan, signed the brief and appeared in oral argument on behalf of appellants.

Rex O. Arney of Redle, Yonkee & Arney, Sheridan, signed the brief on behalf of appellee Sheridan County School Dist. No. 1. A.G. McClintock, Atty. Gen. and Edgar Young, Asst. Atty. Gen., signed the brief on behalf of appellees Superintendent of Public Instruction and State Bd. of Educ. Young appeared in oral argument.

Before ROONEY, C.J., and RAPER, THOMAS, ROSE and BROWN, JJ.

RAPER, Justice.

What is a school-year day? That is the principal, if not the only, question in this

appeal. The trial judge held that the appellee Board of Trustees, School District No. 1 West, Sheridan County (District Board) was authorized by § 21-4-301, W.S.1977[1] to adopt a four-day school week resulting in a 144 calendar day school year. By the same order, appellee Lynn Simons, Superintendent of Public Instruction for Wyoming (State Superintendent) and the appellee State Board of Education (State Board), were enjoined from taking any steps to deprive the school district from loss of entitlements under the school foundation program[2] by reason of the four-day school week and directed to use all necessary and appropriate efforts to prevent loss of school district revenue from any state or federal source. The appellants are residents, taxpayers, and in some instances parents of children enrolled in School District No. 1 West who sought to enjoin such action of appellee District Board.

The appellants frame the issues to be:
1. "Whether Appellees' actions contravene the Wyoming Education Code of 1969 generally and Wyo.Stat.1977, § 21-4-301 and § 21-13-307(a)(ii) specifically."
2. "Whether Appellees lack statutory and common law authority to implement alternative scheduling for pupil attendance in Sheridan County School District # 1 West."
3. "Whether Appellees have statutory or common law justification for violation of the Wyoming Education Code of 1969."
4. "Whether actions taken by the Appellees contravene the requirements of equal protection under the Wyoming Constitution, statutes and common law."
5. "Whether the actions of the Appellees are in violation of the Wyoming Administrative Procedure Act."

We will reverse.

The facts of the case are simple and not much in dispute in any material way. Gleaned from the record and briefs, it appears that in November 1981, the District Board heard a presentation at a school board convention about the Colorado plan of alternative scheduling of classes to a shortened school week and year. It directed research and evaluation for adaptability of the four-day week to its district. Some of the states where the plan was in effect were contacted. It was determined that a search team of approximately fourteen persons, made up of four parents (including one board member), two students, and the rest school teachers and school administrators, would visit Colorado and New Mexico schools where the plan was in effect.

Upon return of the team in April 1982, it reported and recommended adoption of the four-day school week to the District Board. Public meetings were noticed and held in early May 1982. Over 200 parents protested the idea and recommended further study. On May 19, 1982, the District Board adopted the plan it proposed to submit to the State Board and State Superintendent for permission to try the concept.

At the meeting with the State Board on June 3, 1982, the program was offered. Pe-

1. Section 21-4-301, W.S.1977 in pertinent part provides: "* * * Each school district shall operate its schools and its classes for a minimum of one hundred seventy-five (175) days each school year."

2. Section 21-13-307(a)(ii), W.S.1977 provides: "(a) Each district which meets the following requirements shall be eligible to share in the distribution of funds from the foundation account:

    *    *    *    *    *    *

"(ii) Operated all schools for a term of one hundred eighty (180) days or more during the previous school year; provided, that if the school term of any school in a district was less than one hundred eighty (180) days, the amount allotted per classroom unit under section 21.1-232 of the statutes [§ 21-13-309] for such school shall be in proportion to the length of the term the school actually operated, unless caused by closures of schools due to fuel shortages, fire, construction problems, weather, civil disturbance or threatened civil disturbance, days of national recognition, widespread illnesses, or whenever necessary to protect the health, safety or welfare of students, teachers and other employees, provided such closures are approved by the state board of education or are the result of presidential or gubernatorial executive orders."

titions of protest reportedly signed by some 385 parents of the district were presented. The State Board approved the plan subject to its passing legal muster with the attorney general and a satisfactory system of evaluation being provided. The attorney general's opinion, which we will later allude to in footnote 3, generally approved the concept for the district on an experimental or pilot project basis but not for general application throughout the state. The net effect of the scheme was to lengthen the number of hours students attended school each day for four days of each week, thus reducing the number of school days in the school year to 144.

The appellants brought this suit to enjoin placing the plan into operation and eventually for a declaratory judgment. The district judge denied injunctive relief and held the plan lawful, enjoined the State Superintendent and State Board from interfering with the district in obtaining school foundation funds, and directed that both make every effort to see that the district was not deprived of any loss of revenues from federal and state funds.

We need not discuss the merits of such an alternative scheduling plan nor express approval or disapproval of the idea in reaching a decision. However laudable the program might be, that will not validate unlawful expedients to effect its accomplishment. *Witzenburger v. State ex rel. Wyoming Community Development Authority,* Wyo., 575 P.2d 1100, 1135 (1978).

Section 21–4–301, supra fn. 1, mandates that each school district "shall operate its schools and classes for a minimum of one hundred seventy-five (175) days each school year." Section 21–13–307(a)(ii), supra fn. 2, directs that each school district which operates its schools for a term of "one-hundred eighty (180) days or more during the previous school year" shall be eligible to share in

funds from the foundation account. Provision is made for a prorated share if a term is less than 180 days as well as for emergency and excused closures.

In *Board of County Comm'rs of County of Campbell v. Ridenour,* Wyo., 623 P.2d 1174, 1184 (1981), we summarized some rules of statutory construction appropriately applicable to the case now before us:

"The primary objective in ascertaining the meaning of a law is legislative intent; and, if such intent is expressed clearly and without ambiguity in the language of the statute, such intent must be given effect. Intent must be found in the language of the statute itself. *Oroz v. Hayes,* Wyo. 1979, 598 P.2d 432, 434. Where the language of a statute is plain and unambiguous and conveys clear and definite meaning, there is no occasion for resorting to rules of statutory construction; and the court has no right to look for and impose another meaning. *Wyoming State Treasurer v. City of Casper,* Wyo.1976, 551 P.2d 687, 698. The plain, ordinary and usual meaning of words used in a statute controls in the absence of clear statutory provisions to the contrary. *State v. Stern,* Wyo.1974, 526 P.2d 344, 346. Courts will not enlarge, stretch, expand or extend a statute to matters not falling within its express provisions. *Lo Sasso v. Braun,* Wyo.1963, 386 P.2d 630, 632. Courts will not usurp the power of the legislature by deciding what should have been said. *Barber v. State Highway Commission,* 1959, 80 Wyo. 340, 342 P.2d 723. * * * "

See also *Wyoming State Department of Education v. Barber,* Wyo., 649 P.2d 681 (1982) and School Districts Nos. 2, 3, 6, 9 and 10 in *County of Campbell v. Cook,* Wyo., 424 P.2d 751 (1967).

The trial judge concluded that the word "day" was ambiguous.[3] Ambiguity exists

**3.** This holding is contrary to the views of the attorney general upon whose opinion the State Board and State Superintendent relied. The attorney general concluded that "the State Board may not generally authorize school districts to utilize school calendars which have less than 175/180 calendar days" and that

175/180 days mean calendar days. The attorney general's opinion then set out the justification for a pilot schedule, based on a series of statutes, which was then adopted by the State Superintendent and State Board and which we now disapprove.

when a word or group of words in a statute is susceptible of more than one meaning. *State ex rel. Albany County Weed and Pest District v. Board of County Comm'rs of County of Albany*, Wyo., 592 P.2d 1154 (1979).

We have searched for some definition of "day" which would permit compressing 175/180 days into 144 days, but none we find will fit. Webster's applicable definitions of day are:

"1: the time of light or interval between one night and the next: the time between sunrise and sunset or from dawn to darkness 2: the period of the earth's rotation on its axis ordinarily divided into 24 hours, measured by the interval between two successive transits of a celestial body over the same meridian, and taking a specific name from that of the body—see SOLAR DAY, MEAN SOLAR DAY, SIDEREAL DAY 3a: CIVIL DAY b *among most modern nations*: the mean solar day of 24 hours beginning at mean midnight * * *" (Emphasis in original.)

Black's Law Dictionary (5th ed. 1979) sets out as a first definition that a day is a period of time consisting of twenty-four hours and including the solar day and the night. A solar day is there defined as a term sometimes used as meaning that portion of the day when the sun is above the horizon, but properly it is the time between two complete (apparent) revolutions of the sun or between two consecutive positions of the sun over any given terrestrial meridian, and hence, according to the usual method of reckoning, from noon to noon at any given place. Also included, and one which appears rather appropriate, is that a day is a period of time *within* the limits of a natural day set apart either by law or by common usage for the transaction of particular business or performance of labor, as in banking, in laws regulating the hours of labor, in contracts for so many "days' work," and the like; the word day may signify six, eight, ten or any number of hours. A natural day is then defined as properly the period from midnight to midnight, though sometimes taken to mean the daytime or time between sunrise and sunset.

*Black,* supra, defines a calendar day as containing twenty-four hours—the time from midnight to midnight. We gather from a perusal of Words and Phrases and sampling of some of the cases there cited that the most common definition of a day is the period from midnight to midnight, which is the same as a calendar day.

All of the members of this court having gone to school and experienced the passing of one day to the next over a long period of time, it seems reasonable to take judicial notice of the fact that ordinarily a day commences in the A.M. (ante meridiem—before noon) and ends in the P.M. (post meridiem—after noon) and those two phenomena occur only once in each twenty-four hour period.

We are satisfied that with this very express, clear statutory language, construed in accordance within the plain, ordinary meaning of the word day, the legislature fully intended that students be at school on 175 separate days during a school year. We find no ambiguity. While we need not reach the question because it was not presented, it appears that adoption of the alternative schedule may have jeopardized the foundation entitlements, supra fn. 2, of the school district in that there is a clear statutory mandate that school be held on 180 separate days during the school year.

We will only note in passing that the attempted evasion of the 175/180 day statutory requirement has no sound basis. The general provisions of § 21–2–304(a)(i) [4] authorizing the State Board to prescribe mini-

4. Section 21–2–304(a)(i), W.S.1977 provides:

"(a) In addition to any other duties assigned to it by law, the state board shall:

"(i) Prescribe minimum standards with which public schools and other educational institutions receiving money from any state fund, except the University of Wyoming and the community colleges, must comply. Such standards shall relate to and include:

"(A) General education programs;

"(B) Site selection and building and construction of public schools; and

"(C) The evaluation and accreditation of the public schools."

mum standards for education programs; § 21–2–304(a)(v)[5] to investigate educational needs and means of improving the educational system; § 21–2–305(a)(ii)[6] to require reports and assistance from school boards; and § 21–3–110(a)(v)[7] requiring district boards of trustees to submit reports concerning finances or any other matter required by the State Board or law, are a pretty frail support as against a more clear specific statute. We notice from § 21–2–304(a)(ii) that the State Board has the duty to withhold funds from schools "failing to comply with any applicable law." Where a special provision is made by law, it prevails over the general. *Town of Worland v. Odell & Johnson,* 79 Wyo. 1, 329 P.2d 797 (1958). Courts will not read into laws what is not there, *Matter of Adoption of Voss,* Wyo., 550 P.2d 481 (1976), nor read into statutes exceptions not made by the legislature. *Lo Sasso v. Braun,* Wyo., 386 P.2d 630 (1963). We cannot see wherein, under the general powers of the State Board, it may disregard and make any exception to the 175/180 day requirements. The State Superintendent and State Board should have gone to the legislature through the governor to seek an exception for a pilot program. Section 21–2–306, W.S.1977.[8] The legislature has thus reserved to itself the authority granted it by § 1, Art. 7, Wyoming Constitution: "The legislature shall provide for the establishment and maintenance of a complete and uniform system of public instruction * * *."

In the light of our disposition, there is no need to consider any of the other issues raised by appellants.

The order of the district court approving the alternative 144 day scheduling is reversed and vacated and the district court directed to grant by decree the relief sought by appellants.

---

5. Section 21–2–304(a)(v), W.S.1977 provides:
   "(v) Conduct investigations within or without the state regarding educational needs and means of improving conditions to insure an adequate educational system for the state of Wyoming."

6. Section 21–2–305(a)(ii), W.S.1977 provides:
   "(ii) Require such reports and other assistance from school boards and officials as it may from time to time deem necessary and advisable."

7. Section 21–3–110(a)(v), W.S.1977 provides:

"(v) Submit such reports concerning finances or any other matter as the state board or state law may require."

8. Section 21–2–306, W.S.1977 provides:
   "The state superintendent and the state board shall, in accordance with section 9–21 of the statutes [§ 9–2–103], report to the governor and recommend such legislation concerning education and appropriations for educational activities as they may deem appropriate."