Honorable Hans Dunshee State Representative, 39th District P.O. Box 40600 Olympia, Washington 98504-0600
Dear Representative Dunshee:
By letter previously acknowledged, you have requested our opinion on a question we have paraphrased as follows:
How should the use of military leave (as provided in RCW 38.40.060) becalculated for employees with non-traditional work-hour patterns, such asfirefighters who work 24-hour shifts?
 BRIEF ANSWER
RCW 38.40.060 entitles a public employee to an excused absence for any calendar day in which the employee cannot work due to the necessity of reporting for active military duty. The statute entitles each employee to 15 such days in any calendar year. Thus, employees with non-traditional work schedules may use their military leave at different rates from employees who work a traditional week of five eight-hour days.
 ANALYSIS
Your question requires an interpretation of a state statute requiring state and local public agencies to grant military leave to certain persons. The statute provides as follows:
Every officer and employee of the state or of any county, city, or other political subdivision thereof who is a member of the Washington national guard or of the army, navy, air force, coast guard, or marine corps reserve of the United States, or of any organized reserve or armed forces of the United States shall be entitled to and shall be granted military leave of absence from such employment for a period not exceeding 15 during each calendar year. Such leave shall be granted in order that the person may report for active duty, when called, or take part in active training duty in such manner and at such time as he or she may be ordered to active duty or active training duty. Such military leave of absence shall be in addition to any vacation or sick leave to which the officer or employee might otherwise be entitled, and shall not involve any loss of efficiency rating, privileges, or pay. During the period of military leave, the officer or employee shall receive from the state, or the county, city, or other political subdivision, his or her normal pay.
RCW 38.40.060.
Your question is how to apply this statute to various categories of public employees with differing work schedules. Your specific reference is to a city fire department in which the firefighters work 24-hour shifts, each shift lying partly in one calendar day and partly in the next.
The employer is taking the position that each time an employee misses a shift due to active military service, two days should be charged against the employee's balance of military leave. The employees argue that a single 24-hour shift should count as a single "day," so that they should be charged only one day of military leave for each shift missed. Because various other fact patterns have been presented to us through the years, we take this opportunity to analyze the statute through several examples.[1]
A Washington case answers part of your question and points the way to resolving the rest. In Washington Federation of State Employees v. State Personnel Board, 54 Wn. App. 305, 774 P.2d 421 (1989), the Court of Appeals decided that RCW 38.40.060 grants 15 working days per year of military leave so that employees are required to use military leave for only those days when they would otherwise have been on the job. The Court observed:
As we have noted, the term "days" as used in the military leave statute, RCW 38.40.060, is used in reference to "employment," thus, placing the term in the context of work days, not calendar days. The statute appears to us to be clear and unambiguous in this regard. Accordingly, an employee should not be charged with having taken leave from his "employment" on days the employee is not required to be on the job.
In reaching this decision, the Court declined to follow an Opinion this office had issued in 1959 or to follow the reasoning of the courts of New York and Oregon on the subject.[2] Accordingly, the court struck down a personnel board rule as inconsistent with the statute.
While we had originally reached a contrary conclusion, the Federation case establishes the law on the subject: an employee is required to use military leave only for those days on which the employee would otherwise have been required to report for work. We analyze the question you have asked based on this principle and on two more which are implicit both in the Federation case and in AGO 59-60 No. 76. The second principle is a corollary of the first: that military leave is used on any day when an employee cannot report to his or her regular job because of active duty obligations. The third principle is that military leave must be calculated in days and cannot be reduced or converted to hours.[3] The statute grants the leave in increments of a "day" and cannot be applied in any other way.
Fourth, given the diversity in the work schedules presented by public employees, we must address what a "day" is. We conclude that, since the legislature has not provided otherwise, the term "day" should be read as a twenty-four hour day beginning and ending at midnight. The Court of Appeals has stated the following with respect to defining the term "day":
At common law, a day was defined as the period from midnight to the next, and any portion of a day was generally disregarded. See, e.g., State ex rel. Greb v. Hurn, 102 Wn. 328, 329-30,172 P. 1147, 1 A.L.R. 274 (1918); Ayars v. O'Connor, 45 Wn. 132, 134,88 P. 119 (1906). . .
In re the Marriage of Hansen, 81 Wn. App. 494, 499, 914 P.2d 799
(1996); see also City of Lubbock v. Elkins, 896 S.W.2d 346
(Tex.App. 1995); Johnston v. Board of Trustees, 661 P.2d 1045 (Wyo. 1983). Where the legislature has used the word "day" in some other sense, the courts will follow the intent of the legislature and define the term otherwise. Here, there is no alternative definition of "day" which fits the legislature's intent better than the common law definition. Accordingly, we adopt the common law definition here.[4]
From these four principles, we derive the following standard for applying RCW 38.40.060 to any employee's situation:
For any calendar day in which an employee cannot report to work because he or she has been called for active military duty, the employee is entitled to be excused from work, and is entitled to receive the compensation and benefits which would otherwise have been paid for that day. For such a day, one day of the annual 15 days of military leave is deducted, without regard to the number of hours the employee would have worked that day.
 EXAMPLE
To illustrate these principles, we will set up a hypothetical example:
A, B, C, D, E, F, and G are all employees of Agency, a public governmental unit subject to RCW 38.40.060. These seven are all members of the same military reserve unit, and all seven have been ordered to attend a period of active duty training. They are required to report to a military base at 8:00 p.m. on Sunday, January 3, 1999, and the exercise will end at 8:00 a.m. on Sunday, January 10, 1999. The military base is one hour's travel time from the city in which all seven employees live and work.
Although the seven are all employees of the same agency, they have varying jobs and widely varying work schedules. Therefore, as illustrated below, they will end the week of military training with different balances of military leave.
A works a standard work week from Monday through Friday, eight hours per day. The active duty assignment means that A will not be able to report for Agency work on January 4, 5, 6, 7, or 8. Thus, A will use five days of military leave, and will have a balance of 10 days for possible use later in 1999. Since A is not required to work on the weekends, A does not need to use military leave for January 3, 9, or 10.
B works four days per week, Monday through Thursday, 10 hours per day. The active duty training will require B to miss four days of Agency work — January 3, 4, 5, and 6. Therefore, B will use four days of military leave and will have a balance of 11 days at the end of the week. Note that, while A and B are both full-time employees working 40 hours per week, their varying schedules result in use of military leave in different ways.
C, unlike A and B, works only half time — four hours per day from Monday through Friday. For purposes of military leave, however, C and A are in exactly the same situation. C must use five days of leave to attend the military training, and will have a balance of 10 days remaining for future use.
D is also a half-time employee, but with a completely different schedule: D works a 40-hour week every other week. As it so happens, the week beginning January 4 is D's week "off." Therefore, D will not need to use any military leave that week, and after the week will still have a leave balance of 15 days.
E's position requires work every day of the week, and E works five hours per day (7:00 a.m. to 12:00 noon) seven days per week. Because of the active duty training, E will not report for work on January 4, 5, 6, 7, 8, 9, or 10. Thus, E will use up seven days of military leave, and will have a balance of eight days after the week on active duty. Note that E will not need to use military leave on January 3, because he will have time to complete his work day at Agency and get to the military base in time to start active duty that evening. On January 10, however, E will not finish active duty in time to report for work at Agency.
F and G are firefighters for Agency who work a 24-hour shift, alternating with 48-hour periods off duty. Each shift begins at 8:00 a.m. and ends at 8:00 a.m. the next day. F's schedule would call for work on January 3 and 4, January 6 and 7, and January 9 and 10. Thus, F will be unable to report for work on January 3, 4, 6, 7, 9, or 10. F will use military leave for those six days, and will end the week with a balance of nine days' worth of leave. Meanwhile, G's schedule calls for work on January 2 and 3, January 5 and 6, and January 8 and 9. G's active duty will prevent Agency work on January 5, 6, 8, and 9, requiring the use of four days of military leave and leaving a balance of 11 days. G's work schedule ends early on January 3, permitting G to report for active duty later in the day without missing work or using leave. Although F and G have identical work patterns, their individual schedules and the timing of the active duty exercise leave them with different leave balances.
The operation of RCW 38.40.060 thus results in varying impacts on the leave balances of the seven Agency employees discussed in the hypothetical. At the end of a week of active duty, the military leave balances will range from eight days for E to 15 days for D. This is not as irrational or inequitable as might appear on first sight. The purpose of statutory military leave is not to confer a benefit on employees but to recognize the supervening interest of the United States in having a well-trained military force to accommodate those needs by assuring that, up to the 15-day limit, public employees can meet their active-duty obligations without losing pay or benefits in their state or local government jobs. To the extent they have varying work schedules, the extent of the need for accommodation likewise varies. In the sense that they are all able to meet their active duty obligation without loss of pay or benefits, all the employees are treated alike, and that is the sense the statute was intended to have.[5]
We recognize that varying work schedules produce some anomalous results when applied to individual employees. It seems unlikely that this situation was contemplated when the statute was first drafted in 1939 and that arguments can be made about how best to structure military leave policies. This opinion provides our analysis of how to construe the existing statute. To the extent policy issues are raised, they could of course be addressed through new legislation.
We trust the foregoing will prove helpful to you.[6]
Sincerely,
CHRISTINE O. GREGOIRE
[1] We confine our discussion to the impact of RCW 36.40.060. This statute does not cover, for instance, inactive duty requirements as they might affect employment. We do not reach this issue, nor do we consider the requirements of any federal statutes and rules relating to military leave. Finally, there are collateral issues which are beyond the scope of this opinion, such as the authority of local governments to grant military leave in addition to what the statute provides, or the effect of collective bargaining agreements on military leave calculation.
[2] See 54 Wn. App. at 309-313. In AGO 59-60 No. 76, we reached the conclusion that military leave should be charged from the first day to the last day of a period of active duty, including any days in between (such as weekends), whether or not an employee would have been required to work on those days. The Court of Appeals rejected the notion that employees should be charged leave for days when they would not have worked anyway and overruled this part of our Opinion.
[3] This point is discussed in more detail in an informal opinion we previously provided to you. Letter dated March 31, 1997 from Brian Buchholz, Assistant Attorney General, to Representative Hans Dunshee. As Mr. Buchholz observes, "[t]he statute places no limitation on the length of the working day for this calculation. Rather, when used in the context of excusing leave from `employment,' the term `days' appears to apply to the entire `working day.' As the length of a working day may vary significantly from position to position, the plain language of the statute indicates that the term `day' refers to the working day of each individual employee involved, regardless of the length of the employee's workday." Id. at 2. We reaffirm Mr. Buchholz' reasoning here.
[4] Any definition will produce somewhat arbitrary results in specific cases, given the variety of work schedules involved.
[5] Unlike most vacation or sick leave, the military leave provided in RCW 38.40.060 does not "accumulate" from year to year. Thus, even to the extent employees carry varying leave balances throughout a given year, they all start the next year equal again, with a balance of 15 days each.
[6] We provide this opinion for the purpose of advising you of our view about the proper interpretation of a statute to assist in evaluating the need for further legislation. We do not intend to comment on the current policies or practices of any state or local government unit, and the opinion was not written with the facts of any one case in mind.